In the Matter of the Petition for DISCIPLINARY ACTION AGAINST William D. O'HARA, Jr., a Minnesota Lawyer.

No. 81–640.

Supreme Court of Minnesota.

March 11, 1983.

Michael Hoover, Executive Director, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Jack S. Nordby, Minneapolis, for respondent.

PER CURIAM.

The disciplinary proceedings against William D. O'Hara, Jr., reached this court through a recommendation for disbarment by a court-appointed referee. O'Hara ordered a transcript, thereby challenging the referee's findings. We affirm the referee's findings and conclusions, but in lieu of outright disbarment, order an indefinite suspension.

On April 20, 1979, charges of unprofessional conduct against O'Hara were presented to a panel of the Lawyers Professional Responsibility Board. The panel stayed further proceedings for 2 years on the condition that O'Hara comply with terms imposed by a stipulation between O'Hara and the Director of the Lawyers Professional Responsibility Board executed on June 29, 1979. The stipulation imposed six conditions. O'Hara was required to:

1) abide by the Code of Professional Responsibility;

2) issue no checks that are returned unpaid by his bank because of insufficient funds;

3) comply with all CLE requirements and, when in doubt about Minnesota law, educate himself concerning the law and, if appropriate, associate a lawyer competent to handle the matter;

4) maintain total abstinence from alcohol and other mood-altering chemicals;

5) be placed under the supervision of Edward C. Vavreck, a Minnesota attorney, and furnish to him requested reports; and

6) attend Alcoholics Anonymous meetings weekly and supply verification as requested.

On May 1, 1981, additional charges of unprofessional conduct and non-compliance with the 1979 stipulation were presented to a panel of the Lawyers Professional Responsibility Board. The board filed a petition for disciplinary action on June 26, 1981, based on the four original complaints and five additional complaints. This court appointed the Honorable Nicholas S. Chanak as referee in the proceedings and a hearing was held before him on November 2 and 3, 1981. O'Hara failed to appear at this hearing. Judge Chanak ordered O'Hara to submit to physical and psychological examinations to determine his status regarding alcoholism.

A supplementary petition for disciplinary action was filed on March 16, 1982. This petition incorporated all prior complaints,

added nine additional charges to bring the total number of complaints to 18, and recommended immediate suspension. O'Hara failed to appear at the April 15, 1982, hearing on the petition for immediate suspension.

On May 4, 1982, this court ordered the immediate suspension of O'Hara, pending final disposition of the proceedings. The order provided for reconsideration upon a showing by O'Hara that he:

1. submitted to the examinations ordered by the referee, Judge Chanak, and that he attended all scheduled hearings;

2. is participating faithfully in an alcohol treatment program;

3. has abstained from consumption of alcohol; and

4. has abided by the Code of Professional Responsibility.

Further hearings were held before Judge Chanak on April 28, 1982. On May 13, 1982, Judge Chanak's Findings of Fact, Conclusions of Law and Recommendation for Disbarment was filed. O'Hara ordered a transcript of the proceedings before the referee pursuant to Rule 14(d), Rules on Lawyers Professional Responsibility, thereby challenging the findings and conclusions. O'Hara, however, failed to pay for the transcript and no transcript has been provided.

We believe that the best way to summarize the various complaints is to set out in full the referee's findings, conclusions, and recommendation, herewith attached and made a part of this opinion as an appendix.

While we concur in the referee's findings and conclusions, we depart from his recommendation of outright disbarment. It is obvious upon close study of the record that O'Hara's troubles all stem from chronic alcoholism. He is not an evil nor a dishonest man. If his alcoholism can be arrested, we are convinced he can be restored as a contributing and worthy member of the Minnesota bar. While he continues to drink, however, he is not fit to practice law and the public must be protected.

Accordingly, O'Hara is indefinitely suspended from the practice of law. He may petition for reinstatement only upon the following conditions being met:

1. That he submit to the physical and psychological examinations requested by the referee;

2. That he undertake long-term treatment and rehabilitation for alcoholism;

3. That he make restitution to all clients for any losses they may have sustained due to O'Hara's neglect;

4. That he make available to the Director of the Lawyers Professional Responsibility Board all records requested by the director pertaining to the complaints filed against him, including all records of court appearances which have bearing on the complaint of his inability to appear on behalf of clients;

5. That he abide by all of the terms of the June 29, 1979, stipulation made with the board;

6. No petition for reinstatement, however, shall be made before O'Hara can show total abstinence from the use of alcohol for at least 1 year following treatment; and

7. Since it is clear to this court that there are grounds for immediate disbarment of O'Hara and that the extreme penalty of disbarment is not imposed only because we feel that he should be given an opportunity to rehabilitate himself, such an effort to rehabilitate himself should not be without time limitations. If no petition for reinstatement be made by O'Hara before January 1, 1985, the director may petition this court to make the indefinite suspension permanent in the form of permanent disbarment.

COYNE, J., took no part in the consideration or decision of this case.

APPENDIX

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION FOR DISBARMENT

This matter was heard in St. Paul, Minnesota, on November 2 and 3, 1981, and at a continued hearing in Minneapolis, Minnesota, on April 28, 1982, by the undersigned referee, pursuant to the Minnesota Supreme Court's order of appointment.

Sonya C. Steven, Attorney, appeared on behalf of Michael J. Hoover, Director of Lawyers Professional Responsibility, hereinafter Director. William D. O'Hara, Jr., hereinafter respondent, appeared with his attorney, Jack Wylde, at the November 1981 hearings and with Jack S. Nordby at the continued hearing.

Based upon all files, records and proceedings herein, and pursuant to Rule 14, Rules on Lawyers Professional Responsibility (R.L.P.R.), the following are hereby made as:

## FINDINGS OF FACT

### I.

A. Respondent is licensed to practice law in Minnesota, having been admitted to practice on January 27, 1976. At the time of the hearings respondent was a sole practitioner with offices in November 1981 at 2400 Interlachen Road, Wayzata, Minnesota, and in April 1982 at 358 Central Avenue South, Wayzata, Minnesota. Respondent has paid the registration fee required by Rule 2, Rules of Registration of Attorneys.

B. Respondent is an alcoholic, and underwent treatment for alcoholism in 1977. He has, however, consumed alcohol since completing treatment.

C. A hearing was scheduled to commence before the undersigned at 9:00 a.m. on November 2, 1981. Shortly after 9:00 a.m., a message was received from the respondent that he was at the hospital with his wife, and would be approximately one-half hour late. Respondent did not appear by 10:30 a.m., but did at that time inform his counsel, who was at the hearing, that he, respondent, was ill and unable to appear.

D. The hearing was continued until 2:00 p.m., November 2, 1981, with the understanding that respondent would appear at that time and present medical confirmation of the reasons for his failure to appear in the morning.

E. Respondent appeared at 2:00 p.m., November 2, 1981, but did not present any medical confirmation.

F. The Director then moved that respondent be required to submit to mental and psychological evaluation, to be performed at a licensed facility such as the St. Mary's Rehabilitation Center, the results of which could furnish documentation to the referee regarding respondent's current physical and psychological condition and chemical dependency. The motion was not opposed by respondent or his counsel, and was granted by the referee. An order requiring the evaluation was signed by the referee on November 7, 1981, and forwarded to the parties.

G. Testimony concerning the complaints of the June 24, 1981, Petition for Disciplinary Action was taken on November 2 and 3, 1981, with further hearing continued until after receipt of respondent's medical and psychological evaluations.

H. By June 29, 1979, stipulation (Director's Exhibit 1), respondent admitted the conduct and violations alleged in complaints 1, 2, 3 and 4 of the petition for disciplinary action.

### II.

COMPLAINT NO. 1

A. On or about March 27, 1978, respondent accepted a $200 retainer to represent Shirley Aguilar in a child support dispute. Thereafter respondent failed to fulfill his promise to Aguilar to prepare moving pa-

pers within a week after being retained. Despite numerous phone calls by Aguilar, respondent failed to take any action until the last week in April, 1978, and only then because Aguilar asked another attorney, David Murrin, to intercede on her behalf.

B. Respondent did reserve a hearing time for June 5, 1978, with the assignment clerk of Family Court. However, respondent failed to file a note of issue setting the matter for hearing on June 5, 1978, as promised. As a result of respondent's neglect, the matter was not placed on the court calendar.

C. Respondent did, however, appear in Referee Huspeni's courtroom on June 5, 1978, nearly one hour after the time he had previously reserved. Upon arrival, respondent learned neither the respondent to the child support action nor his attorney had appeared. Respondent then falsely stated to the Court and his client that he had previously served the moving papers by mail.

D. On or about June 7, 1978, respondent filed an unsigned and unnotarized affidavit of Aguilar in support of the June 5, 1978, motion. Respondent also filed an unnotarized affidavit of service executed by himself as affiant, falsely claiming to have served moving papers upon the respondent's counsel.

III.

COMPLAINT NO. 2

A. In or about May, 1978, respondent was retained by Dawn Prybilla to represent her in a child support dispute. Although respondent informed her the matter would be heard on June 5, 1978, he neglected to place the matter on the referee's calendar and failed to serve notice of hearing on the respondent, Richard Rivers. When asked by Prybilla to explain the problem, Respondent placed the blame on Rivers, falsely claiming Rivers had been properly served with the notice.

B. Respondent then informed Prybilla the hearing was rescheduled for July 10, 1978, but again failed to schedule the matter on the referee's calendar. On July 9, 1978, respondent called Prybilla and told her not to appear in court the next day since respondent had failed to properly serve notice of hearing on Rivers. During that conversation, respondent told Prybilla he had served notice on a person erroneously thought by him to have been Rivers.

C. Throughout this period, respondent was also retained by Prybilla to represent her in a visitation dispute with her second husband. Throughout the summer of 1978, respondent assured Prybilla he would file certain motions, but failed to do so.

D. In or about September, 1978, respondent falsely informed Prybilla the hearing was rescheduled for later that same month, and failed to schedule the matter on the referee's calendar. In addition, respondent again failed to serve proper notice on Rivers.

E. Thereafter, Prybilla again requested respondent to seek a hearing. Respondent assured her that this time necessary procedure would be properly followed, but respondent failed to take any further action to protect her interests. Respondent was subsequently dismissed by Prybilla.

F. On or about September 11, 1978, respondent did file moving papers, including an affidavit signed by Dawn Prybilla and purportedly notarized by respondent on September 8, 1978. Said papers also included an unnotarized affidavit of service executed by respondent as affiant, claiming to have served all moving papers, including the affidavit of Prybilla, on August 3, 1978.

IV.

COMPLAINT NO. 3

A. During February and March, 1978, respondent cashed four personal checks totalling $63 at Penny's Supermarket in Crystal, Minnesota, all of which were returned

due to nonsufficient funds. On March 9, 1978, respondent received a phone call from the store manager regarding the checks. Respondent assured the manager he would immediately make the checks good, but failed to do so. On March 11, 1978, respondent was again called and again assured immediate payment. After respondent failed to pay, he received a March 28, 1978, letter by certified mail from the manager of Penny's Supermarket, demanding payment.

B. On June 17, 1978, after hearing nothing from respondent, the store manager filed a complaint with the Crystal Police Department. Respondent still failed to pay until on or about August 30, 1978.

## V.

COMPLAINT NO. 4

A. On September 9, 1978, respondent was arrested and charged with having assaulted his wife, in violation of MINN.STAT. § 609.22.

B. On September 18, 1978, Respondent was found guilty by Judge Kenneth Gill of the Hennepin County Municipal Court. Pursuant to MINN.STAT. § 609.135, however, imposition of sentence was stayed under the following conditions:

1. That respondent issue no more fraudulent checks.
2. That there be no further violence by respondent against his wife.
3. That respondent refrain from drinking any alcoholic beverage.

C. On or about September 21, 1978, respondent again became intoxicated. The stay of imposition was revoked and respondent was sentenced to a 90-day commitment in the Hennepin County workhouse. Respondent served 34 days of the sentence, and was then released to Pioneer House for three weeks.

## VI.

COMPLAINT NO. 5

A. On October 12, 1979, respondent's clients, Joel Marconi and Dawn Prybilla, filed petitions for fee arbitration with the Hennepin County Legal Fee Arbitration Board, hereinafter arbitration board.

B. On October 26, 1979, the petitions were forwarded to respondent indicating that the "attorney's release" was to be executed by respondent and returned within twenty (20) days if he agreed to arbitration.

C. On November 28 and December 8, 1979, notices were sent to respondent, indicating the release had not been signed and returned. Respondent executed the release on December 17, 1979, but failed to return it until January, 1980.

D. By executing the attorney's release, respondent agreed to be bound by the arbitration board's decision.

E. On March 14, 1980, the arbitration board upheld the fee Respondent charged to Prybilla, but found a $125 refund and a $25 loan repayment due Marconi. On March 31, 1980, notice of the board's decision was sent to respondent.

F. On April 24, 1980, Marconi contacted the executive director of the Hennepin County Bar Association regarding respondent's failure to pay the award. On May 2, 1980, a reminder notice was sent to respondent.

G. Respondent failed to make payment to Marconi until November 18, 1980. By a November 20, 1980, letter, the payment was sent to Marconi by the executive director of the Hennepin County Bar Association.

## VII.

COMPLAINT NO. 6

A. On September 9, 1980, respondent and Director discussed respondent's compliance with the June 29, 1979, Stipulation. The Director requested that respondent submit by September 12, 1980, respondent's financial records from January 1 through September 12, 1980; a list of respondent's court appearances for that period; and a list of respondent's active files as of Sep-

tember 12, 1980. Respondent failed to provide the requested information by the deadline.

B. On October 6, 1980, respondent assured Director that the requested information would be delivered by October 9, 1980. It was not.

C. On October 16, 1980, respondent said that the requested information would be delivered by 8:30 a.m., October 20, 1980. Respondent again failed to provide the requested information. By December 10, 1980, letter, Director requested the information by December 16, 1980. Respondent failed to provide the requested information.

D. In his answer to the June 24, 1981, Petition for Disciplinary Action, respondent promised to provide the records to the Director before the hearing in this matter. No records were provided prior to the November 1981 hearing.

E. At the time of the November 1981 hearing in this matter, respondent, under oath, assured the referee that such records would be provided to the Director within two weeks. They were not provided.

F. Respondent testified that following his September 9, 1980, meeting with the Director, due to anger at the indication that the Director might seek respondent's suspension from the practice of law, respondent knowingly and deliberately decided to withhold any cooperation with the Director concerning the provision of records. Respondent did not, however, tell the Director of this decision to withdraw his cooperation, and continued to indicate that his cooperation would be forthcoming. After respondent retained counsel in these proceedings, counsel advised cooperation, but the records were not provided.

### VIII.

COMPLAINT NO. 7

A. Under the terms of the July 29, 1979, stipulation, Edward C. Vavreck agreed to be respondent's supervising attorney and respondent agreed to cooperate with his supervisor. By November 16, 1979, letter, Vavreck informed the Director that respondent had attended only four LCL/AA meetings since July, 1979. Respondent claimed to have regularly attended other AA meetings, and provided the names of two persons to Vavreck for verification. Vavreck was able to verify from one or the other of the two individuals involved that from approximately July 1, 1979, through October 15, 1979, Respondent had attended seven or eight Saturday morning AA meetings.

B. From the beginning of Vavreck's supervision of respondent in July, 1979, through his report to the Director on November 16, 1979, there was a period of eight weeks during which Vavreck had no contact from respondent, despite his having left numerous messages for respondent to contact him.

C. By January 10, 1980, letter, Vavreck wrote to respondent that respondent had not attended an LCL/AA meeting as promised, and that respondent had not attended any LCL/AA meetings since September, 1979, and requested a meeting with respondent in order to verify respondent's status. In response to that request, on January 22, 1980, respondent and Vavreck met at Vavreck's home to discuss respondent's compliance with the stipulation. Among other things, Vavreck stressed the importance of weekly AA meetings, and of verification of respondent's attendance.

D. On March 21, 1980, respondent met with the Director and Vavreck. During their discussion, the Director and respondent agreed to modification of the supervision agreement to include the following requirements:

1. That respondent notify both Vavreck and the Director before he changed his address or phone number.

2. That respondent meet with Vavreck on or before the 15th of each month in order that Vavreck could forward monthly reports to the Director.

3. That respondent issue no further bad checks.

4. That any decision in fee arbitration matters be promptly forwarded to Vavreck.

5. That weekly verification of attendance at an AA meeting be furnished to Vavreck or that Vavreck be immediately notified by respondent if he could not comply with the attendance requirement.

Due to previous difficulties in ascertaining whether or not meetings had been attended by Respondent, it was agreed that, for purposes of the weekly attendance requirement, a "week" would be defined as 12:00 a.m. Sunday through 12:00 midnight Saturday. Respondent was to give Vavreck written confirmation of attendance or to provide him the name of someone to contact for verification.

E. By April 18, 1980, letter, Vavreck informed the Director that respondent had attended only two LCL/AA meetings since March 21, 1980, and had failed to provide verification of his attendance at other meetings.

F. By May 23, 1980, letter, Vavreck informed the Director that respondent had attended only one LCL/AA meeting since April 18, 1980. Respondent had called Vavreck five times in five weeks, stating that he would attend specified meetings. Respondent failed to attend the meetings.

G. By May 28, 1980, letter, Vavreck informed the Director that respondent had assured Vavreck respondent would attend an LCL/AA meeting on May 27, 1980, but failed to do so.

H. During the summer of 1980, respondent did not meet with or otherwise contact his supervisor, and provided no verification to him of attendance at weekly AA meetings.

I. On September 9, 1980, respondent met with the Director and Vavreck to discuss compliance with supervision, and was unable at that time to verify his regular attendance at AA meetings.

J. From the time of the panel hearing in this proceeding up to and including the November, 1981, referee's hearing, respondent furnished no verification to Vavreck or the Director concerning his attendance at AA meetings.

## IX.

COMPLAINT NO. 7A

A. From July 1, 1979, through November 16, 1979, there was a period of eight weeks during which respondent failed to contact Vavreck.

B. From October, 1979, through mid-January, 1980, Vavreck did not hear from respondent, despite his having left numerous requests and messages asking respondent to contact him.

C. At the March 21, 1980, meeting between the Director, respondent, and Vavreck, respondent was requested to submit his ledger to Vavreck for review, and to report any change of address to both Vavreck and the Director.

D. Respondent did subsequently provide to Vavreck what he claimed to be a ledger of current accounts. The ledger was not complete, however, in that, respondent having just initiated his accounting system, there were no disbursements or receipts shown.

E. In the spring of 1980, respondent changed the location of his law office without formally notifying either the Director or Vavreck.

F. Due to respondent's failure to contact his supervisor, it has been impossible for Vavreck to report monthly to the Director concerning the supervision agreement. Although at the November, 1981, hearing respondent expressed ongoing dissatisfaction with Vavreck's actions as his supervisor, he did not request a change of supervisor or indicate his dissatisfaction to the Director.

## X.

COMPLAINT NO. 8

A. On or about March 1, 1980, respondent consumed alcohol.

## XI.

### COMPLAINT NO. 10

A. During the referee's hearing on the petition for disciplinary action against respondent on November 2 and 3, 1981, the Director and respondent agreed that, in order to aid the court, respondent should submit to examinations to ascertain the physical and psychological effects of his admitted chemical dependency.

B. The undersigned on November 7, 1981, ordered respondent to submit to appropriate physical and psychological examinations. The order provided that reports of the examinations be furnished to the court and counsel on or before November 30, 1981.

C. Despite the court's order, no examinations were undertaken or reports furnished by November 30, 1981. Following various correspondence between the Director and counsel for respondent, the undersigned in a January 13, 1982, letter to respondent's counsel gave respondent a further opportunity to complete the examination by January 22, 1982, and to furnish counsel and the court with reports by January 29, 1982. No examinations were done by that date.

D. On February 24, 1982, respondent informed the Director that examinations had been scheduled for March 18, 1982, and some days thereafter. This was only after respondent received notice of panel hearing to consider the Director's request for a petition for immediate suspension. The March 18, 1982, scheduled examination appointment was not kept by respondent.

E. On April 15, 1982, respondent informed the Director that examinations were scheduled for April 20, 1982. Respondent again failed to keep the scheduled appointment.

F. Respondent asserts that he is presently depressed and that his condition may be that of a "dry drunk." He alleges that he is willing and anxious to get such examinations as may be necessary to determine his condition, and to follow through with whatever treatment might be recommended. To date, however, for almost six months, despite the pendency of disciplinary proceedings, and despite a court order requiring his cooperation, no examinations have been done.

## XII.

### COMPLAINT NO. 11

A. At the referee hearing respondent, under oath, promised to furnish to the Director various books and records which had been repeatedly requested by the Director since September of 1980, namely, financial records from January 1 through September 12, 1980; a list of respondent's court appearances for that period; and a list of respondent's active files as of September 12, 1980.

B. As of April 28, 1982, respondent had not provided that requested information.

C. At a meeting on February 24, 1982, respondent agreed to furnish to the Director—by the time of the panel hearing on February 26, 1982—Respondent's court calendar for the period November 1, 1981, through February, 1982. Respondent failed to appear at the panel hearing, and the Director by letter requested that the calendar be provided no later than March 8, 1982.

D. The calendar was not furnished to the Director until the hearing on April 28, 1982.

## XIII.

### COMPLAINT NO. 12

A. On December 16, 1981, the Honorable Deborah Hedlund was arraignment judge in the Wayzata Division of the Hennepin County Municipal Court. When arraignments were called at 9:00 A.M., three defendants on the calendar indicated that their attorney, respondent, was not present, and requested to have their matters passed

over until he arrived. At 10:30 A.M., respondent still had not arrived in Court, and one of respondent's clients proceeded by himself, stating that he needed to return to work.

B. Also on the morning of December 16, 1981, a pre-trial conference in the Eden Prairie case of *State v. Barry John Miler* [sic] was scheduled before Judge Hedlund. The Eden Prairie City Attorney's Office was represented by Mark J. Johnson, who was present in the courtroom or adjoining areas from 9:30 A.M. to 12:15 P.M. Respondent represented Miller. As part of the pre-trial conference proceedings, Judge Hedlund told respondent to speak with Johnson in order to clarify whether or not a jury trial would be needed in the case, and to report back to the court before leaving. Nonetheless, respondent did not talk with Johnson about the case that morning; respondent left the courthouse without giving the court any further information concerning the Miller case.

C. Because of respondent's failure to contact Johnson concerning Miller, Judge Hedlund ordered that a bench warrant would be issued for the defendant's arrest unless, by the following day, either respondent and Johnson had agreed on a disposition and had arranged a date for entry of a plea, or respondent had arranged for a personal appearance before the court to set a date for a jury trial.

D. At approximately 4:45 P.M. on December 16, 1981, Johnson contacted respondent by telephone and informed respondent of the terms of the judge's order. Respondent stated that he did not want to dispose of the case immediately but instead would contact Judge Hedlund the next day. Respondent stated that he would call Johnson the next morning between 8:30 and 9:15 A.M. to discuss disposition of the case.

E. Johnson received no call from respondent on December 17, 1981, nor was Judge Hedlund contacted by respondent on that date. Therefore, a bench warrant was issued for Miller.

F. Miller was brought to jail on the warrant at a later time and had to post bail in order to secure his release.

G. Sometime in January, 1982, Judge Hedlund requested that respondent furnish her a letter explaining his failure to reappear before the Court in the Miller matter on December 16, 1981. Respondent promised to send such a letter, but did not do so. He testified that he decided not to send a letter after hearing of Judge Hedlund's complaint to the Board, but he did not inform her of that decision even when she made further inquiry about the letter.

### XIV.

COMPLAINT NO. 13

A. Respondent was counsel of record for defendant David Tyson, whose case was scheduled as the first jury trial for February 8, 1982, commencing at 8:30 A.M., in the St. Louis Park Division of the Hennepin County Municipal Court.

B. The week before the trial, the prosecutor left a message for respondent asking him to contact her concerning the case. He did not contact her.

C. At the scheduled time for trial, the defendant and the prosecutor were present before Judge Hedlund. Witnesses and jurors were standing by. Respondent did not appear, and later that morning the court continued the case so that the defendant could obtain a new lawyer.

D. Prior to the granting of the continuance, neither the Court, the defendant, nor the prosecutor had been contacted by respondent concerning his failure to appear.

### XV.

COMPLAINT NO. 14

A. Respondent was attorney of record for James Rigdon, who was charged with DWI in November, 1981.

B. On February 19, 1982, a pre-trial conference in the Rigdon matter was scheduled

before Judge Christianson at 10:45 A.M. in St. Louis Park. Respondent's client showed up for the conference, as did the prosecutor, but, although respondent's client waited for an hour or so, respondent did not appear.

## XVI.

### COMPLAINT NO. 15

A. Respondent was retained to represent Barbara Bastyr, who was scheduled for arraignment on a misdemeanor charge in Hennepin County Municipal Court in Hopkins at 9:00 A.M. on February 17, 1982.

B. The City of Hopkins was represented that morning by Jeremy Steiner.

C. At the time that arraignments were called, Bastyr indicated to the court that her attorney, respondent, was not yet present, and asked to have her case passed over.

D. Respondent appeared in court at approximately 10:00 A.M., and approached Steiner to talk about the Bastyr matter.

E. When in close proximity to respondent, Steiner smelled a distinct odor of an alcoholic beverage. Based on his observations, Steiner concluded that respondent had been drinking an alcoholic beverage prior to his court appearance that morning.

F. Respondent consumed an alcoholic beverage on February 17, 1982.

## XVII.

### COMPLAINT NO. 16

A. Respondent spoke with Judge Hedlund in Hennepin County Municipal Court on February 25, 1982, to give her certain information concerning the status of his attorney registration.

B. When respondent leaned over the bench to speak with Judge Hedlund, she was able to detect about him an odor of the burn-off of an alcoholic beverage, and, based on her observations, concluded that respondent had been drinking an alcoholic beverage prior to his appearance in court that morning.

C. Respondent consumed an alcoholic beverage on February 25, 1982.

## XVIII.

### COMPLAINT NO. 17

A. A panel of the Lawyers Professional Responsibility Board, hereinafter panel, was convened to hear charges of unprofessional conduct against respondent at a duly constituted hearing on February 26, 1982. Respondent knew that the panel was being requested to direct a petition for respondent's immediate suspension from the practice of law.

B. Respondent had been notified that panel proceedings would start at 11:00 A.M. He left word at his counsel's office shortly before 11:00 A.M. that he was having car trouble and would be delayed. By the time that the panel proceedings actually commenced, around 2:00 P.M., respondent had not appeared, and he had not furnished any further explanation for his non-appearance.

## XIX.

### COMPLAINT NO. 18

A. On February 27, 1980, Lowell Lair retained respondent to represent Lair in a law suit seeking $50,000 damages for personal injury to the plaintiff, and paid respondent $200 in fees.

B. The suit was scheduled for trial the morning of July 9, 1980, in District Court at the Hennepin County Government Center. Respondent called the court around 10:00 A.M., leaving the message that he had car trouble and would be there within an hour or so. Around 11:00 A.M., respondent left another message that he would be present right after dinner. When the court convened after a noon recess, respondent failed to appear, and Lair was required to represent himself.

C. Judgment was entered against Lair in the amount of $638; an execution on the judgment was made in February, 1981.

D. Subsequently, respondent met with Lair and promised to reimburse him for the judgment amount entered against him, and for his attorney's fees and costs. Respondent's agreement to promptly reimburse Lair was acknowledged in a letter from attorney Marvin Haugen on March 5, 1981. Respondent denied knowledge of the letter, but acknowledged having spoken with Haugen about the Lair case.

E. As of April 28, 1982, no payment had been received by Lair.

AND FROM THE FOREGOING FACTS, THE REFEREE MAKES THE FOLLOWING:

## CONCLUSIONS OF LAW

### I.

**COMPLAINT NO. 1**

A. In Respondent's handling of the Aguilar matter, he neglected a legal matter that had been entrusted to him, and made misrepresentations both to his client and to the court. Respondent violated DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(3), DR 7–101(A)(2), DR 7–102(A)(3), DR 7–102(A)(4), DR 7–102(A)(5), DR 7–102(A)(6) and DR 7–102(A)(8), Minnesota Code of Professional Responsibility (M.C.P.R.).

### II.

**COMPLAINT NO. 2**

A. In respondent's handling of the child support and visitation matters for Dawn Prybilla, he neglected a matter which had been entrusted to him, misrepresented information to his client, and presented unauthentic papers to the court. Respondent violated DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(3) and DR 7–101(A)(2), M.C.P.R.

### III.

**COMPLAINT NO. 3**

A. By issuing insufficient funds checks and then failing to promptly make the checks good despite his repeated assurances that he would do so, respondent violated DR 1–102(A)(4) and DR 1–102(A)(6), M.C.P.R.

### IV.

**COMPLAINT NO. 4**

A. Respondent's violation of the assault statute and his subsequent violation of the terms under which imposition of sentence was stayed for that violation violated DR 1–102(A)(6), M.C.P.R.

### V.

**COMPLAINT NO. 5**

A. Respondent's failure to honor the decision of the arbitration board for a period of six months violated DR 1–102(A)(5) and DR 1–102(A)(6), M.C.P.R., and Opinion 5 of the Board of Professional Responsibility. Respondent's failure to abide by the Code of Professional Responsibility also violated the June 29, 1979, Stipulation.

### VI.

**COMPLAINT NO. 6**

A. Respondent's continued, unexplained, and deliberate refusal to provide records to the Director constituted non-cooperation, and involved misrepresentation. Respondent violated DR 1–102(A)(4), DR 1–102(A)(5) and DR 1–102(A)(6), M.C.P.R.; the doctrine of *In re Cartwright,* 282 N.W.2d 548 (Minn.1979); Rule 25, Rules on Lawyers Professional Responsibility (R.L.P.R.); and the June 29, 1979, Stipulation.

### VII.

**COMPLAINT NO. 7**

A. Respondent's failure to regularly attend AA meetings, or to verify with his supervisor his attendance at such meetings as he did attend, violated the June 29, 1979, Stipulation and subsequent agreements

made with the Director, and DR 1–102(A)(6), M.C.P.R.

## VIII.

COMPLAINT NO. 7A

A. Respondent's failure to cooperate with his supervisor and the Director in accordance with the terms of his supervision agreement constituted a failure to submit to supervision and violated the provisions of the June 29, 1979, Stipulation and subsequent agreements with the Director, and DR 1–102(A)(6), M.C.P.R.

## IX.

COMPLAINT NO. 8

A. Respondent's failure to abstain from alcohol violated the June 29, 1979, Stipulation and DR 1–102(A)(6), M.C.P.R.

## X.

COMPLAINT NO. 10

A. Respondent's inexcusable failure to comply with the referee's November 7, 1981, order over a period of almost six months constitutes continued non-cooperation in violation of Rule 25, R.L.P.R., violates DR 1–102(A)(5) and DR 1–102(A)(6), M.C.P.R., and violates the June 29, 1979, Stipulation.

## XI.

COMPLAINT NO. 11

A. Respondent's continued failure to provide promised documents and records to the Director constitutes further non-cooperation in violation of Rule 25, R.L.P.R., violates DR 1–102(A)(5) and DR 1–102(A)(6), M.C.P.R., and violates the June 29, 1979, Stipulation.

## XII.

COMPLAINT NO. 12

A. Respondent neglected a matter entrusted to him by his client, Barry Miller, and thereby prejudiced or damaged his client. Respondent's conduct violated DR 1–102(A)(5), DR 1–102(A)(6) and DR 7–101(A)(3), M.C.P.R., and the June 29, 1979, Stipulation.

## XIII.

COMPLAINT NO. 13

A. Respondent neglected the Tyson matter, prejudicing his client by failing to carry out his contract of employment. Respondent's conduct violated DR 1–102(A)(5), DR 1–102(A)(6), DR 7–101(A)(2), and DR 7–101(A)(3), M.C.P.R., and the June 29, 1979, Stipulation.

## XIV.

COMPLAINT NO. 14

A. Respondent neglected the Rigdon matter, prejudicing his client by failing to carry out his contract of employment. Respondent's conduct violated DR 1–102(A)(5), DR 1–102(A)(6), DR 7–101(A)(2), and DR 7–101(A)(3), M.C.P.R., and the June 29, 1979, Stipulation.

## XV.

COMPLAINT NO. 15

A. Respondent's conduct violated the June 29, 1979, Stipulation, and violated DR 1–102(A)(6), M.C.P.R.

## XVI.

COMPLAINT NO. 16

A. Respondent's conduct violated the June 29, 1979, Stipulation, and violated DR 1–102(A)(6), M.C.P.R.

## XVII.

COMPLAINT NO. 17

A. Respondent's failure to appear for the panel hearing violated DR 1–102(A)(5)

and DR 1–102(A)(6), M.C.P.R. and violated Rule 25, R.L.P.R., and the June 29, 1979, Stipulation.

## XVIII.

COMPLAINT NO. 18

A. Respondent's conduct in the Lair case violated DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(3), DR 7–101(A)(2) and DR 7–101(A)(3), M.C.P.R., and the June 29, 1979, Stipulation.

## RECOMMENDATION

Respondent's repeated, admitted unprofessional conduct resulted in his being placed under supervision in July, 1979. His conduct since then not only involved further breaches of his duty to clients, but also evidences a complete and total disregard for the disciplinary system by his willful failure to comply with the stipulation or to cooperate with his supervisor. Such failure, coupled with his cavalier attitude toward the referee's proceedings and orders, calls for imposition of the severest sanction. It is therefore recommended that respondent be disbarred.

Dated this 12th day of May 1982.

/s/ Nicholas S. Chanak
Nicholas S. Chanak, Referee