**In the Matter of the Petition for DISCIPLINARY ACTION AGAINST Walter D. WEYHRICH, a Minnesota lawyer.**

**No. C4–81–1100.**

Supreme Court of Minnesota.

Oct. 28, 1983.

Michael J. Hoover, St. Paul, for appellant.

Bruce A. Olander, Minneapolis, for respondent.

PER CURIAM.

The Lawyers Professional Responsibility Board filed with this court a petition alleging that the respondent Walter D. Weyhrich had been guilty of professional misconduct beginning in 1977 and continuing through October 1981. We assigned the petition to a referee for hearing pursuant to Minnesota Rules on Lawyers Professional Responsibility. Subsequently, the referee submitted his findings to this court. Because the record shows a continuing pattern of gross neglect in the handling of client matters, we disbar the respondent.

Respondent was admitted to the practice of law in 1972 and since that time has been in the private practice of law in Minnesota. In February of 1981, the Director of Lawyers Professional Responsibility issued an amended complaint, charging the respondent with neglect in several matters. That complaint also charged respondent with failure to cooperate with the Lawyers Professional Responsibility Board. Following receipt of that complaint, respondent admitted its allegations in a written stipulation. The complaint and stipulation were submitted to a panel of the Lawyers Professional Responsibility Board on March 6, 1981, and the stipulation was approved by the panel. In the stipulation, respondent agreed to abide by the Code of Professional Responsibility; to initiate and maintain office systems and procedures sufficient to ensure that he promptly respond to communications from clients, courts and other persons interested in the matters he was handling and to ensure regular review of each file he was handling; and to decline any legal work that he could not handle in a professional and timely manner. Moreover, respondent agreed to be placed on supervision for 2 years by a supervisor acceptable to the Director of Lawyers Professional Responsibility; to cooperate fully with the supervisor in demonstrating respondent's continuing compliance with the terms and conditions of the stipulation; and to make periodic reports to the supervisor concerning the status of all matters then being handled by respondent. Finally, respondent agreed that the supervisor furnish to the Director reports as requested by the Director concerning respondent's compliance with the terms and conditions of the stipulation.

Thereafter, upon further investigation the Director discovered additional complaints of unprofessional conduct in violation of the March 1981 stipulation. The Director then filed the present petition with this court. On July 29, 1982, after yet more investigation, the Director filed a supplemental petition, alleging five additional counts of unprofessional conduct.

■ On October 29, 1981, this court immediately suspended respondent from the practice of law. We also referred the matter for hearing before a referee. After a hearing, the referee filed his findings and conclusions with this court on February 22, 1983. Since no transcript of the proceeding before the referee was ordered by the petitioner or by the respondent within 5 days of the referee's filing of the findings with this court, those findings and conclusions are conclusive. Minn.R.Law.Prof.Resp. 14(d); *In re Nelson,* 327 N.W.2d 576, 580 (Minn. 1982). We have given great weight to the referee's findings and conclusions in disciplinary proceedings. *In re Fling,* 316 N.W.2d 556, 559 (Minn.1982); *In re Scallen,* 269 N.W.2d 834, 841 (Minn.1978). The referee, in his findings of fact, found all nine counts in the Director's petition to have been proved, and his conclusions of law cited violations of various provisions of the Minnesota Code of Professional Responsibility for (1) repeated neglect of client matters; (2) failure to communicate with clients; (3) failure to appear in court on a number of occasions; (4) bad faith litigation; and (5) failure to cooperate with the Director's investigation. The referee also found that respondent had failed to estab-

lish any disability by clear and convincing evidence.

After entering into the March 6, 1981 stipulation, respondent failed to implement effective office systems and procedures to ensure his prompt attention to telephone calls and correspondence from clients, courts and others. Moreover, he failed to arrange for another supervising attorney to monitor his practice. He failed to cooperate with the Director's office regarding new complaints of unprofessional conduct and neglect of client affairs. Between April and September of 1981, respondent failed to make written or oral reply to several letters by the Director seeking to establish supervision as required by the March stipulation. During the same time, the Director received additional complaints of unprofessional conduct. When the Director sought a reply from respondent to these complaints, he received no answer.

1. *Wolfson Matter.* Weyhrich was retained by Jerald Barton Wolfson to represent him in an attorney disciplinary proceeding. Weyhrich neglected the case after the referee's hearing and failed to cooperate with the Director's investigation of the matter. Admittedly, respondent was having some difficulty in contacting his client but he failed to notify the Director of that difficulty. Respondent neither filed a brief nor notified this court of his intention not to file a brief on behalf of Wolfson. Although he was notified of oral argument for September 11, 1981, respondent failed to notify the court or the Director's office that he would not appear for the argument. He did not appear for the argument, nor did he file a notice of withdrawal or otherwise withdraw from the representation of Wolfson. Several months later, Wolfson applied to this court to vacate the findings of the referee and alleged neglect on the part of his attorney, respondent Weyhrich.

2. *Chase Matter.* Harold Chase engaged respondent to represent him in a federal age discrimination suit against his former employer, the Western Union Telegraph Company, in United States District Court. Respondent was notified of a pretrial conference scheduled for August 20, 1980, but he did not notify his client about the pretrial conference. Moreover, he failed to notify either opposing counsel or the court that he would not be attending the conference. In fact, he did not attend the pretrial conference although he was aware that failure to attend a pretrial conference frequently results in a dismissal of the case. Subsequently, the clerk of the United States District Court sent respondent notice of the magistrate's recommendation for dismissal. Later, the clerk sent respondent notice of the United States District Court's order of dismissal of the case. Respondent took no steps to object to or appeal the dismissal. Thereafter, Chase called the respondent on several occasions. Respondent continually assured Chase the case was progressing but needed discovery. At no time did respondent inform Chase that the case had been dismissed. Finally, Chase contacted another attorney to represent him. She found out that the suit had been dismissed earlier in the year because respondent had failed to appear at a pretrial conference. Respondent never did file a notice of withdrawal or in any other manner withdraw from representing Chase in this suit. Chase, now represented by new counsel, sued respondent in a legal malpractice action alleging respondent's neglect in his case resulting in dismissal. Respondent neither filed an answer nor requested an extension of time within which to file an answer, although he was aware that his failure to file would result in a default judgment. Default judgment was docketed against respondent in the amount of $246,431. Respondent failed to notify his malpractice insurance carrier of the action against him until after the January 28, 1982 default hearing. Until the time of the hearing before the referee in this proceeding, respondent had taken no meaningful action to secure coverage from his malpractice insurance carrier.[1]

1. At the hearing in this court, counsel for respondent indicated that a pending lawsuit had now been instituted to try to resolve the question of coverage under the malpractice policy.

3. *Wu Matter.* Respondent Weyhrich was retained to defend James Wu in a warranty suit brought by the purchasers of an apartment building which Wu had sold. In connection with that suit, the plaintiffs requested the production of Wu's tax records and purchase agreements for other properties he owned. Respondent advised Wu not to produce the documents. Wu and respondent agreed that respondent would object on behalf of Wu to disclosure of the documents. He told Wu that, if the objection was not successful he would appeal any order compelling production. When the documents had not been produced, the plaintiffs moved the court to compel production, to strike defendant's counterclaim and to hold defendant Wu in contempt of court for failing to produce the documents. The Hennepin County District Court ordered the documents produced. Respondent failed to tell his client of the court's order and to inform his client of the consequences of failure to produce. Wu made frequent but unsuccessful attempts to contact respondent at his office and home. From late January 1981 until April 1981, he had no contact with respondent. On March 4, 1981, the Hennepin County District Court struck Wu's answer and counterclaim and awarded a default judgment against him in that case in the amount of $138,448. Respondent did not notify Wu of the hearing or of the entry of the default judgment. Finally, on July 1, 1981, unable to contact respondent, Wu contacted another attorney who then informed Wu of the outstanding judgment against him. Wu retained other counsel to reopen the judgment, litigate the merits and file the subsequent appeal of the second judgment. In this connection, Wu has incurred bills for legal services in the approximate amount of $10,000, and an appeal to this court has entailed further legal fees.

4. *Smith Matter.* Respondent Weyhrich was retained by Russell and Jane Smith who had been joined as third-party defendants in litigation in Crow Wing County District Court in a suit challenging an easement that had been granted by the Smiths to another party. Respondent received a notice of the deposition of his client Russell Smith scheduled to take place in Brainerd, Minnesota, in December 1979. Respondent assured the attorney for the opposite party that he and his client would appear for the deposition as scheduled in Brainerd. However, he failed to notify his client of the deposition, to notify opposing counsel he would not attend the deposition and to make any effort to reschedule it. Neither respondent nor his client appeared at the deposition. Upon application, the district court awarded judgment in the amount of $385 against respondent and Smith for their failure to appear at the deposition. None of this judgment has been paid. On three different occasions, the clerk of Crow Wing County District Court sent respondent a notice of the Smith trial on a given date in January 1980. Moreover, the day before the scheduled trial the clerk of court called respondent, advising him of the trial date. Respondent failed to notify his client of the trial. Neither respondent nor his client appeared for the trial on the date scheduled. Respondent did not notify opposing counsel or the court that he would not appear. The court ordered a default judgment against the client in the amount of $2,500.

5. *Dillworth Matter.* Respondent represented Arthur and Laura Dillworth in a suit against Claude, Inc. He commenced the action by service of summons and complaint on an attorney representing Claude, Inc. Claude, Inc. counterclaimed for abuse of process because of improper service of the complaint. At a special term motion hearing, respondent represented to the court that a memorandum supporting respondent's claim of proper service was being prepared and would be provided to the court and counsel. No memorandum was ever provided to either. Respondent did request and receive a continuance of the trial of the case to a week certain trial setting. As that date approached, respondent was unable to locate his client, but he failed to notify the court or counsel prior to the trial date that he was unable to proceed. In addition, he failed to file a notice of withdrawal or to otherwise withdraw

from representation of the Dillworths when he could not locate his clients. The day before trial was scheduled the assignment clerk of Hennepin County District Court notified respondent that the case would be coming on for trial before a designated judge the next day. At that time and at no time did the respondent notify the court or opposing counsel he would not appear. In fact he did not appear for trial. On the day set for trial, the assignment clerk and one of the Hennepin County District Court judges left messages for him but he did not return the calls. Subsequently, in a default hearing, the court awarded $1,000 plus costs and disbursements against respondent and his client for bad-faith litigation. No part of the judgment has been paid.

6. *Mortenson Matter.* Respondent represented one of the parties in a marriage dissolution matter which was set for trial before a judge on a date certain. Respondent failed to notify the court or opposing counsel that he would not appear. He did not appear for trial of that matter and failed to notify his client of the trial setting.

7. *Lack of Cooperation.* The Director of Lawyers Professional Responsibility, in several letters from December 31, 1981 to June 15, 1982, requested Weyhrich's response to the Chase, Wu and Dillworth charges of unprofessional conduct. Although it is undisputed that respondent received the Director's letters, respondent did not respond.

■ The foregoing shows repeated gross neglect of client matters over a 4-year period, all in violation of Minn.Code Prof.Resp. DR 1–102(A)(5), (6); DR 6–101(A); and DR 7–101(A)(1), (2)(3). Respondent's failure to communicate with his clients and, in essence, his abandonment of his practice violated Minn.Code Prof.Resp. DR 1–102(A)(5), (6). Respondent's failure to appear in court for representation of his clients violated Minn.Code Prof.Resp. DR 1–102(A)(5), (6) and DR 6–101(A). Respondent's bad-faith litigation violated Minn.Code Prof.Resp. DR 1–102(A)(5), (6) and DR 7–102(A). Finally, respondent's repeated failure to cooperate with the Director of Lawyers Professional

Responsibility violated Minn.Code Prof. Resp. DR 1–102(A)(5), (6) and this court's holding in *In re Cartwright,* 282 N.W.2d 548 (Minn.1979).

In similar cases of serious and egregious misconduct inflicting great harm upon clients and the public interest, this court has imposed the sanction of disbarment. *In re Serstock,* 316 N.W.2d 559 (Minn.1982); *In re Agnew,* 311 N.W.2d 869 (Minn.1981); *In re Okerman,* 310 N.W.2d 568 (Minn. 1981); *In re Wackerbarth,* 287 N.W.2d 651 (Minn.1979); *In re Braggans,* 280 N.W.2d 34 (Minn.1979). The misconduct of respondent in this case appears more severe than the misconduct in those previous cases. The referee found neglect of at least eight client matters which resulted in approximately $400,000 in default judgments, including an unsatisfied default malpractice judgment against respondent Weyhrich as a result of the dismissal of the Chase age discrimination claim.

■ Respondent candidly admits he is not presently competent to engage in the practice of law and, in essence, admits the facts as found by the referee. However, he urges this court to continue indefinitely his suspension from the practice of law because of alleged disability that caused his misconduct. Respondent urges us to impose the sanction of indefinite suspension as we have done in other cases. *See, e.g., In re Peters,* 332 N.W.2d 10 (Minn.1983); *In re O'Hara,* 330 N.W.2d 863 (Minn.1983); *In re Leali,* 320 N.W.2d 413 (Minn.1982); and *In re Iverson,* 305 N.W.2d 753 (Minn.1981). It is clear that respondent suffered from alcoholism prior to 1975. It is likewise clear that he has not consumed alcoholic beverages since that time. However, he alleges severe depression and, in effect, mental illness as the cause of his difficulties. In *In re Johnson,* 322 N.W.2d 616 (Minn.1982), we set forth with specificity standards of proof required when the claim of disability is raised in mitigation in attorney discipline cases. The criteria in *Johnson* related to disability caused by alcoholism and therefore are not directly applicable to the respondent's claim of mitigation in this case.

Nevertheless, we hold that in a case where a respondent attorney raises psychological disability as a mitigating factor, he must prove that he indeed has a severe psychological problem, that the psychological problem was the cause of the misconduct, that he is undergoing treatment and is making progress to recover from the psychological problem which caused or contributed to the misconduct, that the recovery has arrested the misconduct, and that the misconduct is not apt to recur. Finally, the accused attorney must establish these criteria by clear and convincing evidence.

■ The referee concluded that respondent had failed to meet the *Johnson* standards as modified for psychological disability. Respondent failed to demonstrate by clear and convincing evidence that he was, in fact, affected by psychological disorders at the time of the misconduct. He failed to prove any causal relationship between any alleged psychological problems and the misconduct. No proof was offered that he is recovering from the disorders. Moreover, there is no evidence that any sort of recovery had arrested the misconduct or that the misconduct is not apt to recur. At the hearing before this court, his counsel indicated that since the time of the referee's hearing respondent has placed himself under counselling by a psychologist. However, no evidence was presented either to the referee or to this court that would indicate that he is recovering from any psychological problems or that he had a psychological problem which contributed to or caused the misconduct with which he is charged or that there is any prospect of recovery so that the conduct is not apt to recur. In each of the cited cases where the sanction of indefinite suspension was imposed, the misconduct was either isolated, less severe, resulted from proven disability, or ceased after stipulation or probation. Here, respondent's conduct has been continuing. It was more egregious. There is no proven disability, nor did it cease after respondent had stipulated his conduct and been placed on probation.

■ The purpose of an attorney disciplinary proceeding is to protect the public and the court and to serve as a deterrent against future misconduct. *In re Serstock,* 316 N.W.2d 559, 561 (Minn.1982); *In re Hanson,* 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960). The record here shows that for over 4 years there was repeated neglect resulting in significant financial harm to respondent's clients, failure by respondent to communicate with his clients, lack of availability by respondent to his clients, failure to cooperate with the ethics investigator, and failure to cooperate with the Director of Lawyers Professional Responsibility, as well as repeated violations of a probation stipulation entered into earlier. Such a continuing pattern of misconduct underscores the ongoing need to protect the public and warrants disbarment. *In re Braggans,* 280 N.W.2d 34 (Minn.1979).

Accordingly, respondent, Walter D. Weyhrich, is disbarred from practicing law in the State of Minnesota.