In the Matter of the Application for the DISCIPLINE OF Robert Lowell SMITH, an Attorney at Law of the State of Minnesota.

No. CO–85–1152.

Supreme Court of Minnesota.

Feb. 7, 1986.

William J. Wernz, Director, Betty M. Shaw, Asst. Director, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Stuart Webb, Minneapolis, for respondent.

PER CURIAM.

The Lawyers Professional Responsibility Board filed with this court a petition alleging professional misconduct committed on the part of respondent, Robert Lowell Smith. We assigned the petition to a referee for hearing pursuant to the Minnesota Rules on Lawyers Professional Responsibility. Subsequently, the referee submitted his findings and conclusions to this court. Both the Director of the Lawyers Professional Responsibility Board and respondent Smith agreed to accept the referee's findings and conclusions as conclusive. *See In re Furuseth*, 274 N.W.2d 122 (Minn.1978).

The Director's petition raises seven counts of unprofessional behavior on the part of Smith, including prior acts of misconduct, neglect of client affairs, failure to communicate with clients, and misrepresentation. The findings on each count will be summarized and the referee's conclusions will be indicated.

1. *Prior Misconduct.* The referee found that Smith had committed several acts of misconduct for which previous sanctions had been issued. These included failing to file necessary documents for two estates, failing to respond to probate court's orders, failing to communicate with clients, and neglecting several clients' pending matters. The referee concluded that Smith's conduct violated DR 1–102(A)(4), (5), (6), DR 6–101(A)(3), and DR 6–103(A)(1), (2), (3).

2. *Neglect and Failure to Communicate with Betty Ryan.* The referee also found that Smith had neglected and failed to communicate with a former client, Betty

Ryan. Ryan had hired Smith in the fall of 1979 to complete the probate of her mother's estate. On January 23, 1980, Smith appeared at a hearing at which Ryan was named personal representative.

Smith, however, failed to complete the probate of the estate for the next 3 years. Despite several phone calls and visits from Ryan, and promises by Smith to finish the matter, the estate remained open. In the spring of 1983, Smith sent Ryan state and federal estate tax returns for her signature. Ryan then sent those returns to her sister's attorney, Richard Gullickson, who found significant errors in Smith's calculations. Ryan requested that Smith correct the errors but received no reply. On October 5, 1983, Ryan discharged Smith and retained Gullickson. Gullickson thereafter filed the estate tax returns on October 29, 1983. The estate, however, was penalized $2,717.48 for an untimely filing and suffered interest charges of $5,579.32.

The referee concluded that Smith's acts of neglect and failure to communicate violated DR 6–101(A)(3) and DR 7–101(A)(1), (2), and (3).

3. *Neglect and Failure to Communicate with Crown Construction.* Crown Construction Company had originally retained Smith in 1967 to handle some corporate matters. Crown thereafter retained Smith to represent Crown in several law suits Crown anticipated due to allegedly defective exterior siding it had installed. Smith filed suit against the manufacturer and several distributors of the siding in 1977. When two of the defendants submitted interrogatories to Crown, Smith failed to respond. Both defendants then sought orders compelling discovery, which were granted. Smith, however, failed to comply with the orders and the district court dismissed both defendants from the action.

In addition, the homeowners whose siding was defective filed suit against Crown. When Smith failed to attend a properly noticed hearing for summary judgment, the court granted summary judgment against Crown with respect to liability. Crown thereafter dismissed Smith and retained other counsel. An action was then brought against Smith, which was later settled. Smith acknowledged that Crown's damages of $14,663.90 were attributable to him and agreed to pay Crown $6,000.

The referee concluded that Smith's conduct in his representation of Crown violated DR 6–101(A)(3) and DR 7–101(A)(1), (2), and (3).

4. *Neglect and Misrepresentation of Kassahun Gebre-Michael.* Kassahun Gebre-Michael was an Ethiopian citizen who came to the United States in 1973 to have open heart surgery. In October of 1980, Gebre-Michael retained Smith to represent him in a petition for asylum with the Immigration and Naturalization Service. Gebre-Michael had been attending school in Minnesota and had been placed on voluntary departure status by the INS. He informed Smith that his visa would expire in November of 1980, but Smith reassured him that "the petition takes care of that."

Gebre-Michael thereafter attempted to contact Smith by phone on several occasions but was unable to do so. Smith also failed to return any calls. Kristine Cannon, the director of the student legal services at Gebre-Michael's school, contacted Smith on behalf of Gebre-Michael and offered to assist Smith in communicating with Gebre-Michael regarding the petition. Smith indicated that Gebre-Michael's petition had been filed and blamed the INS for the delay.

For the next several months, Smith failed to respond to Cannon's phone calls and letters. Once Cannon did reach Smith, he falsely stated that the required documents had been prepared and that a hearing would be scheduled shortly. Three months later, Gebre-Michael dismissed Smith when no such hearing had been scheduled. Gebre-Michael then retained Cannon, who determined that no petition had been filed, that Smith was never registered with the INS as the attorney of record, and that Gebre-Michael's case had been referred to the deportation division of the INS because his visa had expired.

Based on the facts stated above, the referee concluded that Smith had violated DR 1–102(A)(4) and (6), DR 6–101(A)(3), and DR 7–101(A)(1)–(3).

5. *Neglect and Failure to Communicate with Richard and Sandra Schultz.* Richard and Sandra Schultz retained Smith in the spring of 1981 to complete the purchase of the home of Sandra's deceased father. Smith prepared a contract for deed and obtained all the necessary signatures. After obtaining the signatures, however, Smith failed to record the contract for deed for a period of 18 months despite repeated requests by Mrs. Schultz that he do so.

The referee concluded Smith had violated DR 6–101(A)(3) and DR 7–101(A)(2) in his representation of the Schultzes.

6. *Neglect and Failure to Respond to Court Orders regarding Florence Jennings.* Florence Jennings had retained Smith to represent her in the conservatorship of two persons, Laura and Lorraine Iverson. Smith, however, failed to make annual accountings from 1977 through 1982 for either conservatorship. He also failed to inform Jennings that the accountings were required or obtain the necessary information from her.

In 1982, the probate court issued orders to proceed for each conservatorship. Smith failed to respond to either order. On September 15, 1982, the court issued to Smith citations to show cause why accountings should not be filed for either conservatorship. Final accountings covering the entire period of both conservatorships were eventually filed and on January 12, 1983, a final hearing was held. The citations were thereafter dismissed.

The referee concluded that Smith's neglect of the Iverson conservatorships violated DR 1–102(A)(5) and (6), DR 6–101(A)(3), DR 7–101(A)(1), DR 7–106(A), and DR 7–106(C)(7).

7. *Failure to Cooperate.* The referee also found that Smith failed to cooperate with the Director and the Hennepin County Bar Association's District Ethics Committee (DEC) on numerous occasions. Smith failed to respond to or meet with the Director concerning Betty Ryan's complaint, failed to respond to or meet with the DEC concerning the Gebre-Michael, Crown Construction, and Schultz complaints, and failed to appear at a prehearing meeting scheduled by the Director concerning the charges against him.

The referee concluded that Smith's failure to cooperate with the Director and the DEC violated DR 1–102(A)(5) and (6), Rule 25 of the Rules on Lawyers Professional Responsibility, and this court's holding in *In re Cartwright*, 282 N.W.2d 548 (Minn. 1979).

8. *Smith's Psychological Disability.* At the hearing, Smith raised as a mitigating factor his alleged psychological disability. Smith began seeing a licensed consulting psychologist, Dr. Keith Blevens, on April 30, 1985. Smith had been attending weekly consulting sessions with Dr. Blevens since that time. At the request of the Director, Dr. Blevens issued a response to questions concerning Smith's past and present mental health, and the possibility of future recovery. This document was admitted at the disciplinary hearing and used by the referee in issuing his findings and conclusions. The referee basically adopted Dr. Bleven's diagnosis and prognosis as the findings and conclusions concerning Smith's psychological condition.

The referee found that Smith currently suffers from major recurrent depression without psychotic features, but with obsessive compulsive traits. This disorder has existed for approximately 12 to 14 years. The symptoms include sad, blue, and depressed moods; feelings of worthlessness; failure and guilt; burdensome thought patterns which result in slowed thinking and indecisiveness; and decreased effectiveness or productivity both at home and at work. Dr. Blevens concluded, and the referee agreed, that this disorder was severe and substantially contributed to Smith's conduct and ethical violations.

The referee found that Smith had made substantial progress in recovering from his disorder. His symptoms had lessened and

his insight into his problem had increased. He was able to feel positive and to modify the behavior and feelings that had handicapped him in the past.

The referee also found that Smith has decreased his caseload and was exercising better judgment in the cases he accepted and those he referred to others. His improvement had also decreased his tendency toward indecisiveness and procrastination. In addition, Smith instituted new office procedures in an attempt to increase his effectiveness in dealing with client matters. He reduced his case backlog and agreed not to take cases involving probate, family, or immigration law. Finally, Smith established a network of other attorneys which he could consult with concerning legal problems.

It was the referee's conclusion that Smith's severe disorder was a mitigating factor in Smith's misconduct. The referee noted that Smith's misconduct had been substantially arrested through counseling and that the misconduct was not likely to recur if counseling continued.

Because the parties have agreed to accept the referee's findings of fact and conclusions of law, the only question that remains is the proper sanction to be imposed in this case. The referee recommended a public reprimand with probation. This court has continually stated that it places great weight upon the referee's recommendation, but is not bound by it. The final responsibility for determining the appropriate discipline rests with this court. *See In re Franke*, 345 N.W.2d 224, 228 (Minn. 1984).

The purpose of a disciplinary action is not to punish the attorney but to protect the public from future harm. *Id.* This court has therefore held that it will consider four factors in determining how to protect the public and appropriately discipline attorney misconduct. The court must carefully weigh: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary rule violations; (3) the harm to the public; and (4) the harm to the legal profession. *Id.; In re Agnew*, 311 N.W.2d 869,

872–73 (Minn.1981). Disciplinary sanctions will be imposed on those attorneys who, after careful investigation, proper notice and hearing, are found to have demonstrated that they do not possess the qualities of character and the professional competence requisite to the practice of law. *In re Daly*, 291 Minn. 488, 489–90, 189 N.W.2d 176, 178 (1971).

Cases which have considered conduct similar to that engaged in by Smith have normally imposed the sanction of indefinite suspension from practice, if not disbarment. *See, e.g., In re Weyhrich*, 339 N.W.2d 274 (Minn.1983) (attorney disbarred for continued neglect of client affairs); *In re Peters*, 332 N.W.2d 10 (Minn.1983) (indefinite suspension imposed upon attorney who neglected client affairs and failed to communicate with clients); *In re Satterlee*, 296 Minn. 515, 207 N.W.2d 362 (1973) (indefinite suspension imposed upon attorney's dilatory conduct in handling client affairs due to alcoholism).

Smith, however, raises, his psychological disability as a mitigating factor in imposing discipline. This court has, in certain circumstances, been willing to consider mitigating factors when determining the appropriate discipline. *See Franke*, 345 N.W.2d at 229; *Weyhrich*, 339 N.W.2d at 278–79. "In considering mitigating factors, this court looks for an appreciation by [the attorney] of the harm he has caused others and evidence that he considers himself obligated to conform to the canons of ethics." *Franke*, 345 N.W.2d at 229. The court has recognized a psychological disability as a valid mitigating factor in attorney disciplinary actions. *Weyhrich*, 339 N.W.2d at 278–79. In order to establish psychological disability as a mitigating factor, the attorney must show, by clear and convincing evidence, that: (1) he indeed has a severe psychological problem; (2) the psychological problem was the cause of the misconduct; (3) he is undergoing treatment and is making progress to recover from the psychological problem which caused or contributed to the misconduct; (4) the recovery

has arrested the misconduct; and (5) the misconduct is not apt to recur. *Id.*

We hold that Smith has properly established, by clear and convincing evidence, that he suffers from a psychological disability which should be considered as a mitigating factor in his case. It should be noted that the Director agrees that Smith has met his burden with respect to establishing a psychological disability. We therefore impose the following disciplinary sanctions with this disability in mind:

1. Respondent is hereby placed on probation for an indefinite period and within 30 days of the date of this opinion he shall nominate an attorney acceptable to the Director who shall monitor respondent's compliance with the terms of this probationary period. If respondent fails to nominate an attorney acceptable to the Director, then the Director may appoint any licensed attorney acceptable to the Director as probation supervisor. The supervisor shall file written reports with the Director at least quarterly, or at such other more frequent intervals as may be reasonably requested by the Director.

2. Respondent shall cooperate fully with his probation supervisor and with the Director in their respective efforts to monitor compliance with this probation.

3. Respondent shall report at least quarterly to the probation supervisor concerning the status of all matters then being handled by respondent.

4. Respondent shall initiate and maintain office procedures which ensure that there are prompt responses to correspondence, telephone calls, and other communications from clients, courts, and other persons having a legitimate interest in matters which respondent is handling and which will ensure that respondent regularly reviews each and every file and completes legal matters on a timely basis.

5. Respondent shall continue his current treatment with a licensed consulting psychologist and shall complete such therapy programs as are recommended by such psychologist. Upon the Director's request

the respondent shall provide medical authorizations as may be necessary to enable the Director to verify respondent's compliance with this provision.

6. Respondent shall make restitution to the heirs of the estate of the mother of his client Ryan for penalties and interest incurred by reason of his untimely filing of state and federal tax returns.

7. At any time after a minimum of a 2-year period, respondent may petition this court for termination of this probation. Respondent at that time shall have the burden of proving to this court that his psychological disability no longer exists and that he is fit to practice law without supervision.

It is so ordered.

KELLEY, J., took no part in the consideration or decision of this case.