**In re Petition for DISCIPLINARY ACTION AGAINST Patrick J. FLANERY, an attorney at law in the State of Minnesota.**

**No. C2–88–1331.**

Supreme Court of Minnesota.

Nov. 4, 1988.

William J. Wernz, Director of the Office of Lawyers Professional Responsibility, Betty M. Shaw, Sr. Asst. Director, St. Paul, for appellant.

Patrick J. Flanery, Minneapolis, pro se.

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a Petition for Disciplinary Action on June 22, 1988, alleging that respondent had committed various acts of misconduct. On August 2, 1988, the Director filed a supplementary petition alleging further violations. Because respondent failed to respond to either petition, orders were issued deeming the allegations in the petitions admitted pursuant to Minn.R.Law.Prof.Resp. 13(c) and scheduling a hearing before this court. Respondent did not submit a brief, contact the Director's Office to work out a stipulation or appear at the hearing. For the protection of the public, we hold that respondent must be and hereby is indefinitely suspended from the practice of law.

---

Respondent was admitted to practice law on May 11, 1984. In December 1987, the Office of Lawyers Professional Responsibility began to receive complaints about respondent from his clients.

*Wazwaz Matter*

The Wazwazes retained respondent in September 1986 to handle a personal injury matter. Respondent had a settlement discussion with the insurance adjuster in July 1987 and agreed to send the insurance company a demand letter. He never sent the letter and took no further action on the file. The Wazwazes informed respondent they were not happy with his services and requested their file. In December 1987 respondent arranged to meet with the Wazwazes at his office. When they arrived at his office, respondent excused himself to get the file but instead left the building and never returned. Despite their continuing efforts to contact respondent, the Wazwazes did not obtain their file until April 1988.

*Brotten Matters*

Patricia Brotten retained respondent in November 1986 to help her obtain contract for deed payments which had been guaranteed by the co-vendor of the contract. Respondent assisted in arranging for the co-vendor to buy out Brotten's interest in the contract. Brotten notified respondent when she did not receive the first payment from the co-vendor but he took no steps to obtain the payments. Later in the spring, respondent agreed to assist Brotten with several other real estate matters. Respondent attended the meeting scheduled to handle the closing of the transactions but never prepared or recorded the required documents and made no effort to protect Brotten's interest in the money owed her. After that meeting Brotten paid respondent $4500 in legal fees and $317 for future services. When Brotten later called respondent to request that he return her file and account for the fees she had paid him and the earnest money which had been paid to him, respondent did not return her calls.

*Morrell Matter*

Edward Morrell retained respondent to handle a breach of contract claim for him in May 1987. Respondent prepared and served a summons and complaint in October 1987 but after that date respondent failed to return numerous phone calls from Morrell and did nothing further on the file. Respondent also failed to respond to two letters Morrell sent requesting the return of his file.

*Davis Matter*

Betty Davis hired respondent to initiate legal action against a stockbroker. In January 1987 respondent met with Davis and obtained a $350 retainer fee and all of the documents relating to the dispute. For the next 5–6 months Davis repeatedly tried to contact respondent by phone but was unsuccessful. When she finally reached him, respondent assured her he was working on her case. Respondent thereafter arranged two appointments with Davis at her home but did not appear for either meeting. Finally, in October 1987, Davis consulted another attorney to handle the matter for her. Respondent also failed to respond to the calls and letters of the second attorney.

*Tonsager Matter*

In May 1986 Duane Tonsager employed respondent to bring an action against a general contractor and a cement company for a defective driveway. Respondent met with the defendants later that month but no progress was made because of disagreements between the companies about liability. When Tonsager went to respondent's office in May 1987, he was told it had been closed. Tonsager tried to contact respondent by telephone and left messages on an answering machine but respondent did not return the calls nor did he return Tonsager's file as requested.

*Dennis/Neff Matters*

Bradley Dennis and Nathan Neff retained respondent to file bankruptcies for their businesses and to defend them in an action which had been brought against them. Respondent filed bankruptcy petitions in August 1986 but in September 1986, the plaintiff in the lawsuit obtained a replevin order from Hennepin County District Court and sought to have the bankruptcy stay lifted to enforce the replevin

order. Respondent appeared at a motion hearing on September 15, 1986, but never told his clients of the hearing. The court lifted the bankruptcy stay.

In October 1986 the plaintiff in the lawsuit filed a motion for summary judgment. Respondent neither submitted a response in opposition to the motion nor notified his clients of the hearing. On the day of the hearing respondent telephoned the judge's secretary and said he was suffering from ulcers and was unable to appear. The court allowed respondent two additional days to submit arguments in opposition to the motion but he still submitted no response. The court ordered judgment against Dennis and Neff in the amount of $105,811.53 plus $14,987.50 in attorneys fees. Also in October 1986, the bankruptcy trustee moved to dismiss the bankruptcy petitions. Respondent appeared at the hearing but had not notified Dennis or Neff of the scheduled motion hearing. The court dismissed both petitions for failure to file complete schedules.

*Rubbelke Matter*

Gary Rubbelke retained respondent to assist him in recovering a bonus which he believed had been wrongfully withheld by his employer. Respondent accepted the case on a contingency fee basis but never completed a retainer fee agreement. Respondent served the employer with a summons, complaint and interrogatories in March or April 1986 but when the employer counterclaimed for $40,000, respondent did not answer the counterclaim. From fall 1986 until spring 1987, respondent failed to return numerous calls from Rubbelke. During the summer of 1987 Rubbelke finally contacted respondent and asked him to obtain a statement from the co-owner of his former employer. Respondent sent Rubbelke a proposed letter which was poorly drafted and inaccurate and Rubbelke requested it be redrafted. When Rubbelke received a second draft of the letter, he made more changes and returned it to respondent. Rubbelke has been unable to contact respondent since that time.

In addition to the misconduct involving client matters, respondent has not complied with attorney licensure requirements. Respondent was placed on restricted status on December 3, 1987, after he failed to file an affidavit of compliance with continuing legal education (CLE) requirements. On April 1, 1988, respondent failed to pay his attorney registration fee and was therefore suspended from the practice of law. Yet on May 18, 1988, after his license had lapsed, respondent appeared in Hennepin County District Court on behalf of a client and represented to the court that he was licensed to practice law.

Finally, respondent has not cooperated with the Director's Office. Minn.R.Law. Prof.Resp. 25(a) provides: "It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director or his staff, the Board, or a Panel, by complying with reasonable requests, * * *." Attorneys are expected to provide in writing a full and complete explanation of the matter under investigation, to furnish documents and papers related to the matter and to appear at conferences and hearings as arranged. Respondent has not complied with these requirements. He did not respond to the notices of investigation or to letters and phone calls from either the Director's Office or the District Ethics Committee investigator. He also failed to attend meetings scheduled by the Director's Office.

Nearly four months after the first complaint was filed, respondent did telephone the Director's Office and arranged to meet with the investigating attorney. At that meeting respondent agreed to close his practice, notify his clients, respond in writing to all of the complaints and return the files to his clients within a week. At a follow-up meeting, respondent brought brief responses to the first three complaints but had not contacted his clients or returned the files. Respondent finally returned the Wazwaz, Brotten and Morrell files in late April but has yet to provide documentation that he has contacted his remaining clients.

In April 1988 a notice of investigation about the Davis complaint was sent to re-

spondent. Respondent appeared at the Director's Office the day after it was sent, at which time he responded orally to the Davis complaint and agreed to sign a stipulation dispensing with panel proceedings. Respondent signed and returned the stipulation but never responded in writing to the Davis complaint. When an attorney from the Director's Office made a last attempt to contact respondent by phone, the telephone company reported that his phone had been disconnected.

The purpose of disciplinary proceedings is not to punish the attorney but to protect the courts, the public, and the profession and to guard the administration of justice. *In re Peck*, 302 N.W.2d 356, 359 (Minn. 1981). When deciding what sanctions to impose, we consider the nature of the misconduct, the cumulative weight of the violations, the harm to the public and the harm to the profession. *In re Franke*, 345 N.W. 2d 224, 228 (Minn.1984). Although each case is considered on its own facts, prior cases are helpful by analogy. *In re Wareham*, 413 N.W.2d 820, 821 (Minn.1987).

This case involves several categories of misconduct, the most serious of which are respondent's neglect of client files and failure to return client property and unearned retainer fees. This court has previously considered several factors when evaluating the mishandling of client matters including the number of clients harmed, the degree of harm caused, whether the attorney has been disciplined before for similar misconduct and any mitigating circumstances brought to the court's attention.

We have ordered indefinite suspension where attorneys have neglected two or three matters for one client and committed other violations such as practicing after suspension and non-cooperation with the disciplinary process. *See, In re Madsen*, 426 N.W.2d 434 (Minn.1988) (attorney took no action on a personal injury file for over a year, failed to pursue a marriage dissolution for the same client, avoided phone calls from the client and did not cooperate with the Director's investigation); *In re Jensen*, 418 N.W.2d 721 (Minn.1988) (attorney neglected a real estate matter and a personal injury claim for the same client and continued to practice law after having been suspended for failure to pay the attorney registration fee).

In cases of neglect of more than one client's matters, we have typically ordered either indefinite suspension or disbarment. *In re Braggans*, 280 N.W.2d 34 (Minn.1979) involved complaints from several clients, the most serious of which resulted in a default judgment of $767,409.65 against the respondent attorney in a malpractice action for failure to commence a personal injury claim for his client. Braggans was disbarred. We have also disbarred an attorney who repeatedly neglected client matters and failed to communicate with clients over a four year period. The attorney also failed to appear in court on several occasions resulting in default judgments being filed against three of his clients, the dismissal of a lawsuit of another client and admission of allegations against his client in a disciplinary proceeding. *In re Weyhrich*, 339 N.W.2d 274 (Minn.1983).

In cases where this court has ordered indefinite suspension for neglect of client matters, the attorneys either presented mitigating circumstances for the court to consider or entered into stipulations or both. *See, In re O'Brien*, 362 N.W.2d 307 (Minn.1985) (attorney who neglected three client matters, practiced after suspension and refused to cooperate with Director's Office stipulated to indefinite suspension); *In re O'Hara*, 330 N.W.2d 863 (Minn.1983) (court ordered indefinite suspension rather than accept the referee's recommendation for disbarment for attorney who mishandled files of five clients, violated earlier stipulation, failed to cooperate and other violations but suffered from chronic alcoholism); *In re Leali*, 320 N.W.2d 413 (Minn.1982) (attorney acknowledged chemical dependency and stipulated to indefinite suspension for neglect of client matters and violation of trust account rules).

Here respondent's misconduct involved the neglect of at least ten different matters of seven clients. He has presented no mitigating circumstances to this court and has made no effort to negotiate a stipulation

with the Director's Office. The resulting harm to several of the clients was severe, in one case a default judgment and award of attorneys fees against the client for approximately $120,000. In another case, respondent's failure to answer a counterclaim may have resulted in a $40,000 judgment against the client. As to the remainder of his clients, respondent avoided communication with them, refused to return files and documents they had given him and failed to notify them when he closed his office. Although there are no facts to indicate that other clients suffered severe financial losses because of respondent's misconduct, his neglect is serious. The neglect began at least two years ago, only two years after his admission to the bar. After the complaints were brought to his attention by both his clients and the Director's Office, respondent took no affirmative steps to pursue the claims more diligently or to return files and documents to his clients.

Respondent's continuing to practice after his license had been suspended must also be considered. This court has previously held that continuing to practice after suspension for failure to pay attorney registration fees can be one of the bases for attorney discipline. *In re Knutson*, 405 N.W.2d 234, 238 (Minn.1987). In respondent's case, his failure to pay the attorney registration fee occurred in combination with his failure to comply with CLE requirements and after the Director's Office had begun its investigation and respondent was on notice that his conduct was being scrutinized.

The final violation to be considered is respondent's failure to cooperate with the disciplinary investigation. Refusal to cooperate with disciplinary authorities is itself serious misconduct and warrants disciplinary action. *In re Cartwright*, 282 N.W. 2d 548 (Minn.1979). We have recognized that where an attorney decides to cooperate after initially failing to respond to a notice of investigation, the discipline imposed should not be as severe as where the attorney continuously refuses to cooperate. *In re Wareham*, 413 N.W.2d 820, 822 (Minn.1987). That is not the case here.

Although respondent did make several contacts with the Director's Office after investigation of the first several complaints had begun, he never followed through with commitments he made to provide written responses to the complaints of his clients, to return client files or to close his practice and notify all of his clients. In fact, as in *Cartwright*, respondent "ignore[d] the bulk of the correspondence" and "on occasions when he did promise cooperation, his promises were never fulfilled." *Cartwright*, 282 N.W.2d 548, 552. Furthermore, respondent never answered the petition for disciplinary action, never contacted the Director's Office to discuss proposed disciplinary action and did not submit a brief to this court. Although his non-cooperation was not continuous, his cooperation was sporadic and unproductive at best.

By committing multiple acts of misconduct which resulted in serious financial and legal consequences for several clients, respondent has demonstrated disregard for the trust his clients placed in him and in the legal profession. In order to forestall any further harm to the public and to the profession, we order that he be suspended indefinitely effective immediately. He may not petition for reinstatement until five years have passed from the date of this opinion and until the following conditions have been met:

1. Respondent must successfully complete the professional responsibility portion of the bar exam.

2. Respondent must provide documentation that he is current with CLE requirements.

3. Respondent must undergo a psychological evaluation and submit to the Director's Office a report of the examiner's findings and any recommended treatment. If the report recommends treatment, respondent shall also provide documentation of his compliance with the prescribed treatment plan.

4. If respondent can satisfy the aforementioned conditions for his reinstatement, he shall be placed on probation for a minimum of two years

supervised by an attorney acceptable to the Director who shall monitor respondent's compliance with the treatment program and assist respondent with the development of office procedures to ensure prompt response to phone calls and mail and periodic review of files and communication with clients.

If respondent does not petition for reinstatement before October 15, 1994, the Director may petition this court for permanent disbarment.