854 P.2d 1147

**In the Matter of a Member of the State Bar of Arizona, Thomas L. ILIFF, Respondent.**

**No. SB–93–0016–D.**

**Comm. No. 92–1771.**

Supreme Court of Arizona.

June 17, 1993.

**JUDGMENT AND ORDER**

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined *sua sponte* review,

IT IS ORDERED, ADJUDGED AND DECREED that **THOMAS L. ILIFF**, a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of three (3) months, effective as of July 27, 1992, which is the date identical discipline was imposed by order of the Supreme Court of Minnesota, 487 N.W.2d 234, for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that, upon reinstatement, **THOMAS L. ILIFF** shall be placed on probation for a period of two years, effective as of October 27, 1992, which is the date **THOMAS L. ILIFF** was placed on probation by order of the Supreme Court of Minnesota, under terms consistent with the terms imposed by the Minnesota Supreme Court, in addition to the following terms and conditions:

1. Respondent shall submit copies of the reports of the Minnesota practice monitor to the State Bar of Arizona under the same terms as he is required to report to the disciplinary agency in Minnesota.

2. Should Respondent fail to comply with the terms of his probation or fail to make a timely report to the State Bar of Arizona, bar counsel shall file a notice of non-compliance with a hearing committee. Respondent shall be given an opportunity to be heard, after which the hearing committee can make a recommendation to the Disciplinary Commission.

IT IS FURTHER ORDERED **THOMAS L. ILIFF** shall pay the costs of these proceedings in the amount of $207.60.

EXHIBIT A

BEFORE THE DISCIPLINARY COMMISSION

OF THE

SUPREME COURT OF ARIZONA

Comm. No. 92–1771

In the Matter of

THOMAS L. ILIFF,

a Member of the State

Bar of Arizona,

RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed Feb. 22, 1993.]

This matter came before the Disciplinary Commission of the Supreme Court of Ari-

zona on December 12, 1992, for determination of whether it should impose the same discipline upon Respondent as was imposed by the Supreme Court of Minnesota,[1] that is, a three-month suspension followed by a period of probation.

## Decision

By a vote of nine aye, the Commission recommends that Respondent receive the identical sanction to that imposed by the Minnesota Supreme Court; that is, that Respondent be suspended for a period of three months, followed by a two-year probationary period which includes a practice monitor and regular reports to the disciplinary agency. The Commission also unanimously recommends that the effective dates of both the suspension and probationary period be retroactive to and concurrent with those imposed in the state of Minnesota.[2]

## Terms of Probation

In addition to those probationary terms imposed by the Supreme Court of Minnesota, the Commission recommends the following:

1. Respondent shall submit copies of the reports of the Minnesota practice monitor to the State Bar of Arizona under the same terms as he is required to report to the disciplinary agency in Minnesota.

2. Should Respondent fail to comply with the terms of his probation or fail to make a timely report to the State Bar of Arizona, bar counsel

shall file a notice of non-compliance with a hearing committee. Respondent shall be given an opportunity to be heard, after which the hearing committee can make a recommendation to the Disciplinary Commission.

## Facts

Respondent is a lawyer whose primary practice is in the state of Minnesota. He is also a member of the Arizona State Bar.

The Minnesota Supreme Court found that Respondent was retained in April 1986 by two property owners to negotiate a settlement of a claim against a developer who had mistakenly removed a swath of trees from their property. In February 1987, the clients asked Respondent to commence a lawsuit, as preliminary negotiations had failed to settle the matter. Because the developer had admitted liability, the only issue was the extent of the damages. The clients paid Respondent a cost advance of $500.

From 1987 until 1990, Respondent failed to take any action on the matter save filing a summons and complaint in the district court, and then only under pressure from his clients. Respondent never served the opposing parties with the summons and complaint. In fact, Respondent had no contact whatsoever with the opposing parties after January 1987. Throughout this period, however, Respondent continually reported to his clients that the case was making "good progress."

1. This matter comes before the Commission pursuant to Rule 58, R.Ariz.Sup.Ct., concerning reciprocal discipline. Rule 58(a) provides that, upon being disciplined in another jurisdiction, a lawyer admitted to practice in Arizona shall immediately notify the State Bar of Arizona of such action. Rule 58(d) provides that a final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall conclusively establish the misconduct for the purposes of disciplinary proceedings in this state. Rule 58(c) provides that, unless specific elements ex-

ist, as detailed below, the Commission shall impose or recommend identical discipline.

2. Respondent is currently in active practice in the state of Minnesota. On July 17, 1992, the Supreme Court of Minnesota ordered that Respondent be suspended from practice for three months, to be followed by the two-year probationary period. Respondent's three-month suspension from his Minnesota practice began on July 27, 1992, and was completed on October 27, 1992. He is currently on probation for two years.

In September 1990, the clients filed an ethics complaint against Respondent. After the clients refused to obtain new counsel, Respondent falsely stated that he had negotiated a $4,000 settlement offer from the opposing parties. He also told his clients he would refund their $500 advance. The clients accepted the settlement, and Respondent provided them with a check in the amount of $4,500, which was drawn from his trust account.

Respondent also had his clients sign a release he had drafted, which named Respondent and the opposing parties as releasees. Respondent did not advise his clients to consult another attorney before releasing him from liability. The clients were not aware that the settlement was from Respondent personally and that the opposing parties knew nothing about the settlement transaction.

In response to the ethics complaint, Respondent sent a letter to the investigator falsely stating that the clients' file had been "investigated and pursued." When Respondent met with the ethics investigator a few months later, he admitted all of the settlement funds had come from him. However, Respondent continued to make false statements in response to further questions from the investigator.

Respondent was disciplined by the Supreme Court of Minnesota on July 17, 1992, for neglecting his clients' case, making false statements to the clients about the progress of their case, establishing a fictitious settlement, failing to advise his clients to consult outside counsel before signing the release, commingling personal funds in his trust account, and making

false and misleading statements in response to the clients' ethics complaint. This conduct violated Minn.R.Prof. Conduct 1.3, 1.4, 1.8, 1.15(a), 8.1, and 8.4(c). The Supreme Court of Minnesota imposed a three-month suspension followed by a two-year probationary period.

### Discussion of Decision

This matter is directly before the Commission pursuant to Rule 58 dealing with reciprocal discipline. Rule 58(c) provides in part:

The commission shall impose or recommend the identical discipline, unless bar counsel or respondent demonstrates or the commission finds that upon the face of the record from which the discipline is predicated, it clearly appears that:

1. The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

2. There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the commission could not, consistent with its duty, accept as final the other jurisdiction's conclusion on that subject; or

3. The imposition of the same discipline would result in grave injustice; or

4. The misconduct established warrants substantially different discipline in this state.

This matter came before the Minnesota Supreme Court on the referee's report and recommendation[3] that Respondent be suspended indefinitely with the right to apply for reinstatement (with probation) after one year. Upon careful review of the record, the Court found the referee's findings to be supported by full, clear, and convincing evidence. However, the Court determined the conduct warranted a three-month suspension, followed by a probationary period.

---

**3.** This report and recommendation was issued by the referee following a hearing on the matter.

The Commission reviewed the opinion issued by the Supreme Court of Minnesota, along with Respondent's affidavit of compliance for reinstatement, Respondent's reply to order of the Commission, and the State Bar's reply.

In determining whether the misconduct established warrants substantially different discipline, the Commission considered its decisions in similar matters. In *In re Mason*, [167 Ariz. 191, 805 P.2d 1012] (1991), the respondent was censured for, among other things, misrepresenting to a client that he had secured a settlement agreement, failing to prosecute his client's case, and using his own personal funds as settlement funds. Mr. Mason had previously been informally reprimanded. In the instant case, Respondent has been previously admonished, which is the equivalent of an informal reprimand, and placed on probation. In the instant matter, Respondent also made false and deliberately misleading statements in response to the disciplinary investigation.

Standard 7.2 of the American Bar Association's *Standards for Imposing Lawyer Sanctions* provides for suspension when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to the client, the public, or the legal system. Accordingly, the Commission does not believe a period of suspension is inappropriate in this matter.

The Commission has determined that none of the elements required to modify the discipline imposed by the Supreme Court of Minnesota under Rule 58(c) exist. It, therefore, recommends that Respondent receive the identical discipline of a three-month suspension followed by a two-year probation, and that the effective dates of both be retroactive to and concurrent with those imposed in the state of Minnesota.

RESPECTFULLY SUBMITTED this 19th day of January, 1993.

/s/ Raymond W. Brown
Raymond W. Brown, Chair
Disciplinary Commission

STATE OF MINNESOTA

IN SUPREME COURT

C6–91–2041

Supreme Court

In re Petition for Disciplinary

Action against Thomas L. Iliff,

an Attorney at Law of the State

of Minnesota.

Filed July 17, 1992

Office of Appellate Courts

SYLLABUS

Respondent's misconduct warrants a 3–month suspension.

Heard, considered, and decided by the court en banc.

OPINION

PER CURIAM.

Following a hearing, respondent Thomas L. Iliff was found to have violated several Rules of Professional Conduct in his representation of clients in a claim for property damage. The matter is now before us on the referee's report and recommendation of an indefinite suspension with right to apply for reinstatement (with probation) after 1 year.

Respondent was admitted to the Minnesota bar in 1974. He is a sole practitioner. In April 1986, respondent was retained by two property owners to negotiate settlement of a claim against a developer who had mistakenly removed a swath of trees from their Carlton County property. In February 1987, when preliminary negotiations had failed to settle the matter, the clients asked respondent to commence a lawsuit on a one-third contingency basis. Because the developer had admitted liability, the only issue was the extent of damages.

From 1987 until 1990, respondent's only action on the file was to prepare two draft versions of a summons and complaint and a set of discovery requests. In 1989, under

pressure from the clients, respondent filed a summons and complaint in the district court for Dakota County where the clients resided, but he did not serve the summons and complaint on the opposing parties. Indeed, after January 1987, respondent had no communication in any form with the opposing parties. Despite not having taken any meaningful action, respondent falsely continued to assure the clients of his "good progress." In September 1990, the clients filed an ethics complaint, which the Director's office forwarded to respondent. After the clients refused to obtain different counsel, respondent told his clients that he had negotiated a $4,000 settlement offer from the opposing parties. He stated that he would also refund the clients' $500 cost advance. The clients accepted the settlement. A month later respondent met with the clients and gave them a check for $4,500 drawn from his trust account. The clients signed a release, drafted by respondent, wherein respondent and the opposing parties were named as releasees. Respondent did not advise the clients that they should consult another attorney before releasing him from liability. Minn.R.Prof. Conduct 1.8(h). The clients were unaware that the settlement payment was from respondent personally and that the opposing parties knew nothing about the settlement transaction.

On the same date as the "settlement," respondent sent a letter to the attorney to whom the ethics complaint was assigned for investigation. In that letter, respondent stated that the file "has been investigated and pursued." Some months later, in May of 1991, the investigator met with respondent, who then admitted that all of the settlement funds had come from him. When asked why the release form included his name, respondent falsely replied that it was his standard practice. When asked why he had not sought a default judgment against the opposing parties, respondent falsely stated that he could not give the reason. Upon checking with the clerk of court, the investigator discovered that there was no affidavit of service for the summons and complaint. Respondent then admitted that the suit papers had never been served.

Based on these facts, the referee concluded that respondent had neglected the case, made false statements to the clients about the progress of the case, and had concocted a fictitious settlement. The referee also found that respondent had failed to advise the clients to consult outside counsel before signing the release, and had made false and misleading responses to the clients' ethics complaint.[1]

Because respondent ordered a transcript, the referee's findings are not conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). This court accords great deference to the referee on disputed factual questions, particularly when the dispute involves conflicting witness testimony. *In re Ruhland*, 442 N.W.2d 783, 786 (Minn.1989). The court has carefully reviewed the record and finds the referee's findings to be supported by full, clear and convincing evidence. *See In re Simmonds*, 415 N.W.2d 673, 676 (Minn.1987).

The question then becomes the appropriate sanction for respondent's misconduct. This court determines sanctions on a case-by-case basis by examining the specific acts of misconduct together with any aggravating or mitigating circumstances. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). The court considers the nature of the misconduct, the cumulative weight of the violations, and the harm to the public and to the profession. *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988).

Respondent's misconduct essentially falls into two categories: (1) client neglect and misrepresentation, and (2) fraudulent re-

---

**1.** The referee found that this misconduct violated Minn.R.Prof.Conduct 1.3, 1.4, 1.8, 8.1 and 8.4(c). The referee also found that respondent had violated Rule 1.15(a) by placing a $100 retainer in his business account instead of in his trust account and by commingling $4,000 of his personal funds in his trust account.

sponse to an ethics complaint.[2] Both involve serious misconduct and warrant discipline, including suspension. Suspension is warranted when the lawyer knowingly engages in conduct that violates a duty to the profession and causes injury to the client, the public, or the legal system. *See* ABA *Standards for Imposing Lawyer Sanctions* (1991), Standard 7.2.

An added factor here is that respondent has a prior disciplinary record. At the time respondent was retained by the clients in this case, he was on private probation for other client neglect. As part of that probation, he executed a stipulation in which he agreed to "initiate and maintain office procedures which * * * insure that respondent regularly reviews each and every file and completes legal matters on a timely basis." The court expects an attorney to exhibit a renewed commitment to ethical behavior following a disciplinary proceeding. *Isaacs*, 451 N.W.2d at 211–12.

Respondent says his clients were difficult and demanding and that he had a "mental block." He contends that reprimand and probation would be appropriate in this case, citing the case of *In re Freidson*, 426 N.W.2d 188 (Minn.1988). The attorney in *Freidson*, however, did not have a prior neglect citation, nor did his disciplinary violations include lying to the ethics investigator.

We believe a suspension is appropriate. We do note that respondent's misconduct in this case involved only the one file. Any length of suspension, it appears, will have a substantial impact on respondent's practice as a sole practitioner. The referee noted that if it were not for the prior admonition and probation, he would have recommended a public reprimand and probation.

We conclude that a suspension of 3 months is appropriate. *See In re Bernstein*, 404 N.W.2d 804, 805 (Minn.1987) (while great weight is given the referee's recommendation, final responsibility for determining the appropriate discipline must rest with this court). The suspension will begin 10 days from the date of filing of this opinion. Following the 3–month suspension, respondent shall be placed on supervised probation for 2 years. The Rule 18(c) requirements for reinstatement will not apply, but respondent shall pay $750 in costs and disbursements to the Director pursuant to Rule 24, RLPR.

SO ORDERED.

---

2. The referee found trust account violations but did not take them into account in his recommendation for discipline because respondent had received subsequent training on trust account procedures. Thus, it appeared that the accounts were presently being kept properly. Similarly, the referee found a Rule 1.8 violation, but stressed that the other two areas of misconduct were of greater concern under the facts of this case.