In re Petition for DISCIPLINARY ACTION AGAINST Marianne M. MILLOY, an Attorney at Law of the State of Minnesota.

No. C4–91–2460.

Supreme Court of Minnesota.

Dec. 4, 1997.

Martin A. Cole, Acting Director, Craig D. Klausing, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for Director.

Richard L. Pemberton, Pemberton, Sorlie, Sefkow, Rufer & Kershner, P.L.L.P., Fergus Falls, for Respondent.

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against Marianne Milloy. The director asserts that Milloy committed professional misconduct by failing to act diligently and promptly for two clients, failing to communicate appropriately with her clients, withdrawing from her representation of one client without giving the client reasonable notice or adequately protecting his interests, and failing to cooperate with the disciplinary investigations. At the time these alleged acts of misconduct occurred, Milloy was on probation for prior professional misconduct. The director claims that Milloy's misconduct violated Minn. R. Prof. Cond. 1.3, 1.4, 1.16(d), and 8.1; Rule 25, Rules on Lawyers Professional Responsibility (RLPR); and the terms of her probation. A referee found that Milloy had violated several rules of professional conduct and recommended either that she voluntarily resign from the practice of law or that this court suspend her indefinitely until she can clearly demonstrate that she is competent to practice law.

Milloy appealed, arguing that the referee's findings are clearly erroneous and that no discipline is warranted, or, alternatively, that any discipline should be mitigated by her diagnosis of Attention Deficit Disorder (ADD). We conclude that Milloy's conduct violated the rules of professional conduct and the terms of her probation. We suspend Milloy from the practice of law for a minimum of 90 days and require that before being readmitted to the practice of law she prove her competence in a Rule 18, RLPR, reinstatement proceeding.

Marianne Milloy was admitted to practice law in Minnesota in 1970. After working for two Twin Cities law firms, she opened her own law office in Brainerd in 1975. Milloy practiced mainly in the family law area. She had a very active practice, generally main-

taining over 100 active client files. In the fall of 1995, Milloy closed her Brainerd law office. She testified that she did so partly because of problems she had with the attorney disciplinary authorities, but mostly because of her desire to spend more time with her family.

Milloy is not new to the disciplinary process. She has been put on probation four times for professional misconduct. In May 1984 and again in July 1987, she entered into stipulations for private probation. Her misconduct included incompetence, failure to communicate with her clients, and failure to cooperate with the disciplinary investigation. In April 1992, this court publicly reprimanded Milloy and placed her on two years supervised probation. *In re Milloy*, 484 N.W.2d 251, 251–52 (Minn.1992). The misconduct that led to the 1992 public reprimand and probation included neglect of client matters and failure to communicate with clients. *Id.* at 251.

In July 1995, Milloy entered into yet another stipulation for supervised probation. In this stipulation, she admitted that she had neglected a client matter, failed to communicate with two clients, failed to obtain the consent of a former client before representing an adverse party against the client, and failed to cooperate with the disciplinary investigation. The conditions of her probation included cooperating with the director to monitor her compliance, responding promptly to the director's correspondence, cooperating with the director on any allegations of misconduct, abiding by the Minnesota Rules of Professional Conduct, and submitting a monthly inventory of all active client files to her supervising attorney. Milloy committed the misconduct we consider here while she was on probation for a fourth time. This misconduct consists of three matters: her representation of Mary Ellen Rockwell, her representation of Eric Remmick, and her failure to cooperate with the disciplinary investigation.

## A. The Rockwell Matter

The first allegation of misconduct involves Milloy's representation of Mary Ellen Rockwell. Milloy first represented Rockwell in a dissolution proceeding in 1980. Rockwell was very satisfied with Milloy's work, so she returned to Milloy in May 1995 when she had questions about her ex-husband's upcoming retirement and pension benefits. During this meeting, Milloy telephoned the Minnesota State Retirement Director to inquire about Rockwell's interest in her ex-husband's benefits. Rockwell gave Milloy a retainer and later testified that it was her understanding that Milloy would be in contact with her.

Milloy continued her investigation into the Rockwell matter. She recalls discussing with the Retirement Director the possibility of amending Rockwell's dissolution decree and concluding that it was in Rockwell's best interests to leave the decree language as it was. Milloy believed that she communicated her conclusion to Rockwell, but she could not recall a specific telephone call or office meeting when they discussed a possible amendment. Milloy did testify that when she advised Rockwell of her conclusion, she had a "feeling that [she] had not communicated appropriately" with Rockwell, and that Rockwell "wasn't * * * understanding and I was going too fast."

Rockwell, on the other hand, did not recall any conversations with Milloy between their initial meeting and the time Rockwell contacted the director. She testified that she called Milloy several times trying to determine the status of her case, but Milloy did not respond. She also sent Milloy a letter inquiring about the status of her case; again, Milloy did not respond. Finally, in the summer of 1995, Milloy returned one of Rockwell's messages by leaving a voice mail message for her. Milloy's message provided very few details and failed to address Rockwell's questions about her case. Later that summer, Rockwell found Milloy's home telephone number and left a message at her home. Again, Milloy did not respond.

In August 1995, Milloy filed a list of her active client files with her supervising attorney as her probation required, but she did not include the Rockwell matter on the list. Milloy testified that she did not consider the matter to be an open file because there were no court proceedings and she believed that

there was nothing more to be done on the file.

In the fall of 1995, Rockwell telephoned the director to solicit her help in locating Milloy. Rockwell testified that she did not want to start a complaint against Milloy; rather, she simply wanted to find her. Milloy stated that she called Rockwell after she received notice of this complaint. Rockwell said that she and Milloy "had a good conversation"; Milloy explained her version of the situation and then returned Rockwell's retainer. Rockwell testified that she was not pleased with how Milloy handled her matter, but she felt that the issue had been brought to an end.

After her conversation with Milloy, Rockwell asked the director to end her investigation. In a letter to the director, Rockwell stated that there was no need to continue the investigation because she had heard from Milloy and received a refund of her retainer. In the letter, Rockwell said that she "deplore[d] the unprofessional delay and ignoring of [her] case." Nevertheless, Rockwell testified that she still appreciates how well Milloy handled her divorce in 1980.

The director concluded that Milloy met the applicable standards of care and professional responsibility in handling the substantive matter undertaken, but concluded that Milloy failed to communicate appropriately with Rockwell to report the final status of her case and to end the representation. Milloy testified that she "could have handled [the Rockwell matter] better" and that she accepted complete responsibility for the communication breakdown. The referee found that Milloy's failure to communicate appropriately did not directly harm Rockwell. But the referee concluded that Milloy had failed to act diligently and failed to communicate with Rockwell, and concluded that Milloy's conduct violated Minn. R. Prof. Cond. 1.3 and 1.4, as well as her 1995 probation.

## B. The Remmick Matter

The second allegation of misconduct involves Milloy's representation of Eric Remmick. In April 1995, Remmick retained Milloy to represent him in a matter involving child custody and visitation. A hearing on Remmick's case was scheduled for May 31, 1995, but the guardian ad litem in the case, attorney David Hermerding, testified that he requested a continuance because he did not have his report ready. Hermerding requested this continuance the day before the hearing, and did not notify all the parties because he believed that the court administrator would contact them. Milloy did not contact Remmick about the continuance. Remmick drove 90 miles from Duluth to Brainerd to attend the May 31 hearing, only to find that the hearing was canceled. Milloy did not come to the Brainerd courthouse that day for the scheduled hearing. However, Remmick did meet with Hermerding that day and did resolve certain visitation issues.

Another hearing was scheduled for September 18, 1995. Milloy testified that she never really expected a hearing to occur on that date, but a date was scheduled in order to keep things moving. She claimed that she explained this to Remmick. In August, Milloy sent Remmick a letter about the September hearing. When Milloy sent this letter to Remmick, she had already decided to close her law office and was negotiating the sale of her practice to Hermerding. On September 7, 1995, Milloy wrote Remmick a letter to terminate her representation. The letter stated that she was selling her law office to Hermerding and another attorney and that Remmick would need to retain another attorney immediately. Hermerding testified that the September 18 hearing did not take place, although it is not clear why the hearing was rescheduled for November.

Remmick filed a complaint with the director on May 16, 1996. In his complaint, Remmick asserted that Milloy was in Vail, Colorado during the May 31, 1995 hearing and did not inform him that the hearing had been canceled. He also stated that Milloy withdrew from his case shortly before the September hearing and failed to return his retainer. Remmick did not testify at the disciplinary hearing.

The referee found that Remmick suffered no direct harm other than delay as a result of Milloy's actions. The referee concluded that there was no disciplinary violation in failing

to inform Remmick of the continuance of the May 31 hearing. But the referee did conclude that failing to notify Remmick of the status of his case violated Minn. R. Prof. Cond. 1.4 and that withdrawing from the representation shortly before a scheduled hearing violated Minn. R. Prof. Cond. 1.16(d). The referee also concluded that this conduct violated the terms of Milloy's 1995 probation.

## C. Failure to Cooperate in the Disciplinary Investigation

In his petition for disciplinary action, the director requests that this court discipline Milloy for her failure to cooperate during the initial phases of the disciplinary investigation. On the Rockwell matter, the director sent Milloy six letters over a three-month period before she responded.[1] The director sent two follow-up letters to which Milloy did not respond at all. The director then sent a letter scheduling a meeting to discuss the Rockwell matter. Milloy did not respond to this letter or attend the meeting. About one month after the director sent the letter, Milloy called the director, said she was out of town when the letter arrived, and rescheduled the meeting. Milloy did attend the rescheduled meeting. Shortly after this meeting, the director sent three letters spanning a three-month period regarding the Remmick complaint. Milloy did not respond to these letters.[2]

On August 15, 1996, the director attempted to serve a petition for disciplinary action on Milloy by mail. Milloy did not return the admission of service forms included with the petition. The director then served the petition on Milloy personally on August 23, 1996. Milloy did file an answer, but not until October 15, 1996, more than one month past the 20–day limit of Rule 14, RLPR. Milloy testified that she initially did not file an answer because she was hoping that she could settle the matters out of court. She also testified that she has "not responded appropriately to the [Discipline] Board," but she claimed that

once she did respond, she cooperated fully. The referee concluded that Milloy's failure to cooperate violated the terms of her 1995 probation.

## I.

Milloy has ordered a transcript of the disciplinary hearing; therefore, the referee's findings of fact and conclusions of law are not conclusive. 14(e), RLPR. Nevertheless, in attorney discipline matters, the referee's findings will not be set aside unless they are clearly erroneous. *In re Selmer*, 529 N.W.2d 684, 686 (Minn.1995). Moreover, this court will defer to a referee's findings when the findings rest on "disputed testimony or in part on a respondent's demeanor, credibility or sincerity." *In re Barta*, 461 N.W.2d 382, 382 (Minn.1990).

## A. The Rockwell Matter

The director contends that Milloy's conduct in the Rockwell matter violates Minn. R. Prof. Cond. 1.3 and 1.4 and the terms of her probation. Rule 1.3 provides that an attorney "shall act with reasonable diligence and promptness in representing a client." The comments to this rule state that such diligence and promptness must continue until the relationship ends. If there is any doubt about the continued existence of an attorney-client relationship, the burden falls on the attorney to clarify, "preferably in writing," that the relationship has ended. Further, the rule may be violated even if the client's substantive rights are not affected because, in itself, "unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness."

Rule 1.4(a) provides that an attorney "shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." An attorney must also "explain a matter to the extent reasonably necessary to permit the

---

**1.** The director's letters were dated October 18, 1995; October 20, 1995; November 14, 1995; December 7, 1995; December 18, 1995; and January 3, 1996. Milloy finally responded on January 16, 1996.

**2.** The first letter was sent on May 17, 1996 to Milloy's old business address. The second letter was sent on June 6, 1996 to Milloy's home address. The third letter was sent by certified mail on July 3, 1996. Milloy signed for this letter.

client to make informed decisions regarding the representation." Minn. R. Prof. Cond. 1.4(b).

Milloy argues that the referee's findings and conclusions in the Rockwell matter are clearly erroneous. She states that she attempted to contact Rockwell after their initial meeting and that they simply "missed each other's phone calls in the summer of 1995." Milloy also credits part of the failure to communicate to the problems with switching the telephone line over when she closed her law office in the fall of 1995. However, both Milloy and Rockwell testified that there was virtually no communication between them after their initial May meeting. Further, Milloy acknowledged that there were communication problems with Rockwell, and Milloy accepted complete responsibility for the communication problems. After hearing the testimony, the referee concluded that Milloy violated Minn. R. Prof. Cond. 1.3 and 1.4 in her representation of Rockwell. We hold that the evidence presented is sufficient to support the referee's findings and conclusions in the Rockwell matter.

### B. The Remmick Matter

■ Milloy also argues that the referee's findings and conclusions in the Remmick matter are clearly erroneous. The referee concluded that Milloy violated Minn. R. Prof. Cond. 1.4 and 1.16(d) by not keeping Remmick adequately informed about the status of his case and by withdrawing from representation without giving Remmick reasonable notice. Minnesota Rules of Professional Conduct 1.16(d) provides that upon terminating representation "a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

Remmick's complaint stated that Milloy failed to tell him that his first court appearance on the child custody matter was canceled. The referee found that there was "disputed evidence whether [Milloy] had time and information to communicate the continu-

ance to Mr. Remmick," and concluded that Milloy did not violate any disciplinary rules in failing to notify Remmick of the hearing cancellation. The director does not dispute the referee's conclusion.

There was substantial evidence, however, to support the referee's conclusion that Milloy did violate rules of professional conduct when she terminated her representation of Remmick. Milloy admitted that she sent a letter to Remmick withdrawing from the case only 11 days before a scheduled hearing. Milloy claimed that any communication problems with Remmick were his fault because he moved at least four times during the representation. But she admitted that Remmick did not move during the three months preceding her withdrawal, and that she had his address during this period. Given the upcoming hearing and the sale of her practice to the guardian ad litem, Milloy should have acted sooner and taken additional steps to protect Remmick's interest when terminating the representation. We conclude that Milloy violated Minn. R. Prof. Cond. 1.4 and 1.16(d) on the Remmick matter.

### C. Failure to Cooperate with the Disciplinary Investigation

■ The referee made several findings regarding Milloy's failure to cooperate with the disciplinary investigation. Minnesota Rules of Professional Conduct 8.1(a)(3) and Rule 25(a), RLPR, both require that a lawyer comply with reasonable requests from the director. Violation of these rules is in itself "unprofessional conduct and shall constitute a ground for discipline." Rule 25(b) RLPR. Milloy testified that she has "not responded appropriately to the Board," and there is ample evidence that Milloy failed to respond to the director's initial inquiries. We conclude that Milloy violated Minn. R. Prof. Cond. 8.1(a)(3), Rule 25(a), RLPR, and the terms of her 1995 probation by failing to cooperate with the disciplinary investigation.

### II.

■ In deciding the appropriate discipline for an attorney who has engaged in misconduct, this court gives great weight to the referee's recommendations. *In re Perry,*

494 N.W.2d 290, 293 (Minn.1992). The final responsibility for determining appropriate discipline, however, rests with this court. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). The purpose of attorney discipline is "not to punish the attorney but to protect the courts, the public, and the profession and to guard the administration of justice." *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988). In determining appropriate sanctions, this court considers the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the profession. *Id.* Any discipline imposed depends on the specific facts of the misconduct along with any aggravating or mitigating factors. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990).

The referee concluded that Milloy is not a "suitable candidate" for further probation because she has been on probation four times before and has continued to violate the professional rules of conduct. Moreover, while on probation, she has failed to cooperate with the disciplinary investigation. As the referee said, "[m]embers of the public have a right to expect diligence and communication from a lawyer they choose to represent them," and because Milloy is "unable to give this," the referee concluded that Milloy should not engage in the practice of law.

 While this court decides each discipline case on its own facts, earlier cases are helpful by analogy. *Flanery*, 431 N.W.2d at 118. A recent analogous case is *In re Grzybek*, 552 N.W.2d 215 (Minn.1996). In *Grzybek*, the attorney failed to establish a basis for his fee, to keep clients informed, to respond to client's requests for information, to return client property promptly, or to cooperate with disciplinary authorities. *Id.* at 215. There was no direct injury to Grzybek's clients. *Id.* at 217. We concluded that "[i]n the aggregate, however, the violations [were] of such a nature that the public is not served by permitting this type of nonresponsiveness." *Id.* Further, Grzybek's lack of cooperation with the disciplinary authorities showed an "utter lack of regard for the disciplinary process," and this lack of cooperation

was in itself "serious professional misconduct." *Id.* We suspended Grzybek for six months. *Id.*

We dealt solely with the issue of an attorney's failure to cooperate with a disciplinary investigation in *In re Cartwright*, 282 N.W.2d 548 (Minn.1979).[3] The director repeatedly requested information from Cartwright regarding the investigation and Cartwright repeatedly failed to respond. *Id.* at 549-50. This court said that "it is incumbent upon an attorney to cooperate with disciplinary authorities in their investigation and resolution of complaints against [that attorney]." *Id.* at 551. In *Cartwright*, we concluded that such failure to cooperate constituted a separate act of professional misconduct, and we suspended Cartwright for six months. *Id.* at 552. Cartwright's failure to communicate was similar to Milloy's misconduct.

While Milloy admits that she initially did not respond appropriately to the director, she emphasizes that she is now cooperating fully. This court has recognized that "where an attorney decides to cooperate after initially failing to respond to a notice of investigation, the discipline imposed should not be as severe as where the attorney continuously refuses to cooperate." *In re Flanery*, 431 N.W.2d at 115; *see also In re Stockman*, 502 N.W.2d 209, 212 (Minn.1993) (concluding that an initial failure to cooperate may be mitigated if the attorney participates fully at a later stage). Because Milloy has now decided to cooperate with the director, the discipline imposed need not be as severe as the six-month suspension given in *Grzybek* or *Cartwright*.

 In deciding what sanction is appropriate, this court will also look at both aggravating and mitigating factors. Prior disciplinary action taken against an attorney is an aggravating factor. "The court expects an attorney to exhibit a renewed commitment to ethical behavior following a disciplinary proceeding." *In re Iliff*, 487 N.W.2d 234, 236 (Minn.1992). This is especially true when the prior misconduct is similar to the current

---

**3.** In *Cartwright*, all the substantive complaints were terminated in the attorney's favor or not pursued by the Board. Therefore, the only issue remaining was his failure to cooperate with the Director's Office in the investigation of those complaints. 282 N.W.2d at 548 n. 1.

acts of misconduct. *In re Isaacs,* 451 N.W.2d at 212.

■ This court looks closely at prior misconduct, especially when current misconduct occurs while an attorney is on probation. "For probation to be successful, it must result in renewed commitment to ethical and professional behavior." *In re Munns,* 475 N.W.2d 82, 85 (Minn.1991). Therefore, "[a]n attorney on probation should be especially careful to assure compliance with obligations imposed on him in his capacity as a lawyer." *Id.*

Milloy has been disciplined four times before and was on probation when she committed the current misconduct. The prior incidents involved her failure to communicate with clients and her refusal to cooperate with disciplinary investigations, the very misconduct for which she is presently before this court. Milloy's prior misconduct and discipline are aggravating factors and weigh heavily against her in this case.

Milloy, however, argues that there are several mitigating factors in her favor. Several Brainerd attorneys testified that Milloy has a good reputation as a knowledgeable family law attorney. Indeed, the referee found that Milloy "has a good general reputation, has done a great deal of both legal and non-legal charitable work, and that she is a very caring person with a strong social conscience."

■ Milloy further argues that her diagnosis of ADD should mitigate any discipline. A psychological disability will mitigate discipline if the attorney proves by clear and convincing evidence that five factors are met: (1) the attorney has a severe psychological problem; (2) the psychological problem was the cause of the misconduct; (3) the attorney is undergoing treatment and making progress; (4) the recovery has arrested the misconduct; and (5) the misconduct is not apt to recur. *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983).

Milloy's psychologist, Dr. Karin Baltzell, testified that Milloy has ADD. Dr. Baltzell explained that Milloy has all 14 characteristics of ADD, while only 12 are required for a diagnosis. She also stated in her report that Milloy's "latest problem with the Legal Eth-

ics committee is directly related to her diagnoses." Therefore, Milloy has offered some evidence that she has a psychological problem that at least contributed to her misconduct. The referee found that Milloy did prove that she has a psychological disorder, but concluded that she had failed to prove that this disorder is the "sole cause of her misconduct," or that she has made sufficient recovery from her ADD such that her misconduct is not likely to recur.

Milloy informed this court that she is currently taking Ritalin for her ADD. There is no evidence, however, that Milloy's medical treatment has arrested the misconduct or that the misconduct is not apt to recur. Rather, there was testimony that the current misconduct occurred while Milloy was in therapy with Dr. Baltzell and taking medication for her ADD. Milloy is not currently in therapy. While Milloy has offered some evidence on her ADD, she has failed to prove with clear and convincing evidence all of the five *Weyhrich* factors necessary for a disability to mitigate discipline.

■ Milloy also argues that ADD is a protected disability under the Americans with Disabilities Act (ADA), 42 U.S.C. (1996), and that she should not be discriminated against because of her ADD. Other jurisdictions have held that the ADA applies to disciplinary authorities because they are state agencies. *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Busch,* 919 P.2d 1114, 1118 (Okla.1996). These courts have found, however, that they have not only a right to discipline disabled attorneys who engage in misconduct, but a duty to impose discipline when it is necessary to protect the public. *See id.* at 1119–20 (imposing a two-year suspension on an attorney with ADD and emphasizing that the court has "a constitutional duty in overseeing the Bar to insure that its members are fit to practice"); *Florida Bar v. Clement,* 662 So.2d 690, 699–700 (Fla.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1829, 134 L.Ed.2d 933 (1996) (holding that the ADA does not prevent disciplinary authorities from disbarring an attorney with a bipolar disorder who had misappropriated client funds). We too have a duty to impose disci-

pline when it is necessary to protect the public regardless of an attorney's disability.

 In fact, even when an attorney meets the burden of proof on the *Weyhrich* factors, this court may still impose discipline to protect the public until that attorney can prove fitness to practice law. For example, in one disciplinary case, the attorney proved that his "troubles all stem from chronic alcoholism." *In re O'Hara,* 330 N.W.2d 863, 865 (Minn.1983). Although this was a mitigating factor, we concluded that "[w]hile he continues to drink, * * * he is not fit to practice law and the public must be protected." *Id.* Therefore, we suspended him indefinitely and conditioned his reinstatement on a showing that he was abstaining from alcohol and undergoing long-term treatment. *See also In re Farrell,* 476 N.W.2d 165, 166 (Minn. 1991) (holding that before reinstatement attorney must show that he has overcome any disability that "would prevent him from practicing law competently and ethically"); *In re Porter,* 449 N.W.2d 713, 719 (Minn.1990) (concluding that although attorney had not proven disorder caused the misconduct, he must first show "that he has overcome any psychological disability which would prevent him from competently and ethically practicing law" before reinstatement); *In re Peck,* 302 N.W.2d 356, 360 (Minn.1981) (holding that despite an alleged disability "suspension is nonetheless warranted, if necessary to protect the public or the judicial system").

Milloy has repeatedly violated the rules of professional misconduct, has violated the terms of her probation, and has continually failed to cooperate with the disciplinary authorities when investigations became necessary. Although her good reputation in the legal community and her diagnosis of ADD may serve as mitigating factors, discipline is still necessary to protect the public. Accordingly, we order that:

1. Respondent Marianne Milloy is hereby suspended from the practice of law for 90 days commencing 14 days from the date of this order;

2. Respondent comply with the requirements of Rule 26, RLPR;

3. Before readmission, respondent must prove her competence to practice law in a Rule 18, RLPR, reinstatement proceeding.

4. Respondent shall pay to the director the sum of $900 in costs and disbursements pursuant to Rule 24, RLPR.

So ordered.